*In re* THE TOWN OF LISBON ELECTION ON THE QUESTION OF THE CONTINUATION OF PROHIBITION OF SALE OF LIQUOR.

Second District   No. 81-567

Opinion filed February 25, 1982.

Peter L. Krentz, of Plano, for appellants.

Dallas C. Ingemunson, State's Attorney, of Yorkville, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiffs, five registered voters of the Township of Lisbon, appeal from the order of the trial court which dismissed their petition contesting the action of the township canvassing board and upheld that board's determination that an election proposition had failed.

In 1939 there was an election under section 2 of article IX of "An Act relating to alcoholic liquors" (Ill. Rev. Stat. 1939, ch. 43, par. 167) to determine whether the sale of liquor should be prohibited in the unincor-

porated areas of Lisbon Township. The proposition submitted to the voters was:

"Shall the sale at retail of alcoholic liquor be prohibited in that portion of Lisbon township lying without the corporate limits of a city, village or town?"

The affirmative won, and accordingly the sale at retail of alcoholic liquor was banned and that condition obtained until April 1981 in the unincorporated areas of Lisbon Township. The only incorporated area of the township is the Village of Lisbon. It appears from the record that no sale of alcoholic liquor had been permitted in the Village of Lisbon for many years. There is no official record of a vote on that proposition applying to the village only. However, the defendant's attorney stated in argument at trial that "[t]he official record book is missing and the recollection of the people in the village is that they had a separate vote in the same period of time which followed the repeal." (Presumably the reference is to the repeal of the eighteenth amendment requiring prohibition.) There is no official evidence, however, that the sale of liquor was banned in the Village of Lisbon prior to April 1981.

On April 7, 1981, an election proposition was submitted to the voters of the "Town of Lisbon" reading as follows:

"Shall the prohibition of the sale at retail of alcoholic liquor be continued in Town of Lisbon?"

It will be noted that the proposition voted on varied from the one submitted to the voters in 1939 since, as worded, it applied to the whole Township of Lisbon, not merely the unincorporated areas, as had the 1939 proposition. Since the proposition, as worded, included the whole township, the village residents as well as those outside the village voted on the proposition as submitted. The result was that the ban on the sale of alcoholic liquor at retail was retained by a total vote of 129 to 120. After the election, the township trustees constituted themselves a canvassing board and, by excluding the votes cast by those living within the village, declared that the proposition had failed in the unincorporated areas by a vote of 103 against to 99 in favor of continuing the ban on the sale of alcoholic liquor outside of the village. The village residents voted 30 to 17 to continue the ban.

The plaintiffs then filed a petition to contest the result of the election in accordance with the provisions of section 17 of article IX of "An Act relating to alcoholic liquors" (Ill. Rev. Stat. 1979, ch. 43, par. 182), which provides in part as follows:

"Any 5 legal voters of any political subdivision or precinct in which an election has been held as provided for in this Act, may within 10 days after the canvass of the returns of such election and upon filing a bond for costs, contest the validity of such election by filing a verified petition in the Circuit Court for the county in

which such political subdivision or precinct is situated, setting forth the grounds for the contest. * * *."

In their petition the plaintiffs requested that the trial court either declare that the result of the election was to continue the prohibition of the sale of alcoholic liquor in the "Town of Lisbon," or to declare the election null and void and set it aside. The Township of Lisbon filed a motion to strike and dismiss the petition to contest the election. After considering the memoranda submitted by both sides and hearing the argument of counsel, the trial court entered an order dismissing the contest petition and declared the result of the election to be "that the incorporated Village of Lisbon remain anti saloon territory and that that portion of the township of Lisbon without the corporate limits of a city, village or town shall not continue as anti saloon territory."

In this appeal the plaintiffs contend: (1) that the designation "Town of Lisbon" includes all residents of Lisbon Township, therefore all residents of Lisbon Township were eligible to vote on the single proposition submitted in the April 1981 election; (2) if the proposition as submitted to the voters was intended to include the persons living within the Village of Lisbon (or alternatively to have intended two elections, one in the village applying only to the village and the other to the unincorporated areas applying only to such areas) then the election proposition was defectively stated and a new election must be held.

■■ We think there is no doubt that the expression "Town of Lisbon" in the proposition submitted to the voters at the April 1981 election may properly be considered to embrace the whole territory of Lisbon Township. (See *People ex rel. Hatfield v. Grover* (1913), 258 Ill. 124; *People ex rel. Deneen v. Town of Thornton* (1900), 186 Ill. 162, both of which discuss the meaning of the terms "town" and "township.") From the language of these cases it is clear that a "town" is not intended to mean an incorporated town or village but is the name given to a political unit—usually geographically the same as a township. It does not indicate a municipal corporation, but is organized as a unit of county government under the authority of the State legislature. See also *Committee of Local Improvements v. Objectors to the Assessment* (1968), 39 Ill. 2d 255, which clearly indicates that a "town" is a separate political unit and has a definite historical meaning other than municipality or incorporated town. Sections 5 and 6 of "An Act to revise the law in relation to township organization" (Ill. Rev. Stat. 1979, ch. 139, pars. 5 and 6) explains the division of a county into towns:

"§5. The presiding officer of the county board, with the advice and consent of the county board, shall, at its next session, appoint three commissioners, residents of the county, to divide the county into towns. * * *."

"§6. The commissioners so appointed shall proceed to divide

such county into towns, making them conform to the townships according to government surveys. * * *."

Thus it is apparent that the reference to "town" in the election proposition we deal with here was intended to include more than just the rural areas and more than just the village and, in fact, include the whole of Lisbon Township. Moreover, it appears that that is how it was understood by both the township officials and the voters, since all the voters in the township, both within and without the village, were permitted to and did vote at the same time on this same proposition.

■■ We are of the opinion, therefore, that the election proposition as submitted, *viz.*: "Shall the prohibition of the sale at retail of alcoholic liquor be continued in Town of Lisbon?" referred to the prohibition of such sale throughout the whole township. Under this wording we see no grounds for either excluding the voters residing in the village or treating the election results as applying separately to the two areas, incorporated and unincorporated, as if two separate elections had been held with different results in those two areas.

■■ The township says that the petition to contest the election cannot be heard because it was not presented 30 days prior to the election as provided in section 4 of article IX of "An Act relating to alcoholic liquors" (Ill. Rev. Stat. 1979, ch. 43, par. 169), citing *Havlik v. Marcin* (1971), 132 Ill. App. 2d 532. However, this provision obviously has no application here since plaintiffs are not contending that the proposition stated on the ballot was *per se* improper, but are contending that the *interpretation of the results* was improper, if the proposition was stated correctly. Since the interpretation of the results had to await the action of the canvassing board, the plaintiffs had no reason to contest the election beforehand. The plaintiffs here are contesting the results of the election as applied to the proposition submitted, and *Havlik* has no application to the case before us. Indeed, it could be argued that it is the township which is, in effect, throwing doubt on the validity of the election petition as submitted, for the township seemingly contends that it was not the intent of the petition to include the village residents, yet the wording of the proposition did include them. It was never established that the electors residing within the village proper had ever by an election banned the sale of alcoholic liquor at retail within the village, so it could logically be argued by either side that the proposition actually voted on was improper because if the sale of alcoholic liquor at retail had not previously been banned within the village itself, then it was not proper for them to have voted on *continuing* the ban for the whole town of Lisbon, since the whole town had never so voted in the first place. Only an election petition couched in the same terms as the original election petition, which banned alcoholic liquor in the unincorporated areas, would have been actually correct on the question of *continuing* the ban.

Initially we consider the results of the election as decided by the canvassing board. The authority of a canvassing board is strictly limited. (Ill. Rev. Stat. 1979, ch. 46, par. 22—1 *et seq.*) In *Wells v. Robertson* (1917), 277 Ill. 534, 539, our supreme court, in commenting on the power of a canvassing board to exclude the votes of women cast in an election for judges, said:

> "The members of the canvassing board are mere ministerial officers, and it was not within their province either to determine the constitutionality of our statute on women suffrage or the constitutional question whether or not such associate judges belong to the class of officers for whom women may legally vote under said act. [Citation.] Their duty is a mere mechanical or mathematical duty. They can only compute the votes cast for the several candidates that are duly certified to them and declare the result. *They had no right to go behind the returns and determine whether any of the votes cast were illegal.*" (Emphasis added.)

■■ We have grave doubts, therefore, whether in the case before us the canvassing board had the authority to *exclude* certain ballots otherwise proper in form and marking, simply because they were apparently cast within the village (as determined by their color). Whether or not the residents of the village should have voted in the election in question was not within the province of the canvassing board to determine.

Nor do we agree with the trial court's finding that "[t]he ballot and the system of voting adopted gave the voter a clear alternative to vote for or against the proposition and to vote in the unit in which the voter lived and voted." This finding by the trial court implies there were two precincts involved, one being the village and the other the unincorporated area, but the petition for election described only one precinct—the Town of Lisbon. It may be desirable to treat the village and outside areas as separate precincts in voting on the question of selling alcoholic liquor at retail but this, in our opinion, was not done by the election petition in question.

As we are unable to ascertain from this record whether the Village of Lisbon has ever had an election banning the sale of liquor, the proposition as submitted is defective, and the election of April 7, 1981, is null and void.

Reversed.

SEIDENFELD, P. J., and REINHARD, J., concur.