UNITED STATES of America ex rel.
Charles "Chuck" MILLER,
Petitioner-Appellant,

v.

James GREER, Warden, Menard Correctional Center, Respondent-Appellee.

No. 84–2679.

United States Court of Appeals,
Seventh Circuit.

Argued April 11, 1985.

Decided Aug. 27, 1985.

Rehearing En Banc Granted
Nov. 14, 1985.[*]

---

* Opinion and judgment vacated.

Cummings, Chief Judge, dissented and filed opinion.

Judith Kirby, Office of State Appellate Defender, Springfield, Ill., for petitioner-appellant.

James V. Cinotto, Office of Atty. Gen., Springfield, Ill., for respondent-appellee.

Before CUMMINGS, Chief Judge, FLAUM, Circuit Judge, and PECK, Senior Circuit Judge.[*]

FLAUM, Circuit Judge.

Petitioner Charles Miller appeals the denial of his petition for a writ of habeas corpus, contending that his constitutional rights were violated when the prosecutor improperly commented on his post-arrest silence during his trial in state court for murder, kidnapping, and robbery. We reverse the district court's denial of the writ.

I.

This case involves the brutal kidnapping, murder, and robbery of Neil Gorsuch during the early morning hours of February 9, 1980, in Morgan County, Illinois. Petition-

---

[*] The Honorable John W. Peck, Senior Circuit Judge for the United States Court of Appeals for the Sixth Circuit, is sitting by designation.

er was indicted for the crimes on February 11, 1980, along with Clarence "Butch" Armstrong and Randy Williams. Williams entered into a plea agreement with the state whereby the murder, aggravated kidnapping, and robbery charges against him were dropped in exchange for his guilty plea to one count of kidnapping and his testimony in the separate trials of petitioner and Armstrong.

Randy Williams testified at trial as follows: he, his brother Rick, and Armstrong met Gorsuch in a tavern on the evening of February 8. The four men left together at about 1:30 a.m. the following morning, Armstrong having offered to give Gorsuch a ride back to his motel. After taking Rick home, Williams started driving to Gorsuch's motel. En route, Armstrong began beating Gorsuch in the back seat. Armstrong then told Williams to drive to Williams's house, where Armstrong again beat Gorsuch and got Williams's twelve-gauge shotgun out of the bedroom. The three men then got back into the car and drove to the trailer home where petitioner was staying. While Williams and Gorsuch waited in the car, Armstrong went in and talked briefly to petitioner. Armstrong and petitioner then left the trailer and got into the car. Williams drove to a bridge in an isolated rural area, where Armstrong removed Gorsuch from the car and stood him up against the bridge railing. Williams, Armstrong, and petitioner then each shot Gorsuch once in the head with the shotgun, and Armstrong pushed the body over the railing into the creek below.

Petitioner testified that Armstrong came to his trailer in the early morning hours of February 9 and said that he needed to talk to petitioner because he and Williams had killed somebody. Petitioner went with Armstrong to Williams's house and talked to the two men for awhile. He and Williams then took Armstrong home and had breakfast at Dottie's Cafe, which was run by Williams's mother. After breakfast, pe-

titioner returned to the trailer. He and Williams were arrested that night at a gas station on their way home from a party.

Other witnesses testified that Gorsuch left the tavern on the morning of February 9 in the company of the two Williams brothers and Armstrong. The people in the trailer where petitioner was staying that night testified that Armstrong arrived at the trailer during the early morning hours of February 9 (estimates varied from 4:15 a.m. to 6:30 a.m.) and left with petitioner after a short conversation. Williams's mother testified that Williams and petitioner arrived at her cafe for breakfast at approximately 6:15 a.m. Shotgun shells, other evidence found near the bridge, and the autopsy reports indicated that the murder had taken place essentially as Williams described.

After petitioner testified, the prosecutor began his cross-examination by asking:

> PROSECUTOR: Mr. Miller, how old are you?
>
> DEFENDANT: Twenty-three.
>
> PROSECUTOR: Why didn't you tell this story to anybody when you got arrested?

Defense counsel immediately objected and, out of the presence of the jury, asked for a mistrial. The judge denied the motion and instructed the jury to "ignore that last question for the time being." The judge did not further instruct the jury on the prosecutor's reference to petitioner's post-arrest silence.

The jury found petitioner guilty of robbery, kidnapping, aggravated kidnapping, and murder. He was found not guilty of armed robbery. Petitioner was sentenced to concurrent terms of eighty years for murder, thirty years for aggravated kidnapping, and seven years for robbery.[1]

On direct appeal, a unanimous panel of the Illinois Appellate Court reversed petitioner's conviction and remanded for a new trial. *People v. Miller*, 104 Ill.App.3d 57,

---

**1.** The trial court vacated petitioner's kidnapping conviction because kidnapping is a lesser-included offense of aggravated kidnapping.

59 Ill.Dec. 864, 432 N.E.2d 650 (1982). The appellate court held that the prosecutor's reference to petitioner's post-arrest silence directly violated *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), and that the trial court's attempt to cure the error was insufficient. 104 Ill.App.3d at 61, 59 Ill.Dec. at 867-68, 432 N.E.2d at 653-54. The appellate court found that the evidence against petitioner was not overwhelming:

> [T]here is corroboration for the testimony of the accomplice, Randy Williams. However, nothing except Williams' testimony directly links Miller with the crimes.

> .  .  .  .  .

> The trial was essentially a credibility contest between defendant Miller and Randy Williams. The reference to post-arrest silence cast aspersions on Miller's credibility and may have irreparably prejudiced him in the eyes of the jury. Thus, reversal is required.

*Id.* at 61, 59 Ill.Dec. at 868, 432 N.E.2d at 654.

The Illinois Supreme Court granted leave to appeal and, over Justice Simon's dissent, reversed the appellate court's decision. *People v. Miller*, 96 Ill.2d 385, 70 Ill.Dec. 849, 450 N.E.2d 322 (1983). The majority held that although the prosecutor's comment violated *Doyle*, the error was harmless because the comment was a single, isolated reference during the course of a lengthy trial, because Randy Williams's testimony was corroborated in many respects, and because the jury was instructed to disregard the comment. *Id.* at 396, 59 Ill.Dec. at 854, 450 N.E.2d at 327. In dissent, Justice Simon pointed out that accomplice testimony is inherently unreliable and that the judge's allegedly curative instruction was insufficient. *Id.* at 397–99, 59 Ill.Dec. 855-56, 450 N.E.2d at 328–29.

Petitioner filed a petition for a writ of habeas corpus in the United States District Court on August 22, 1983, pursuant to 28 U.S.C. § 2254 (1982). On August 27, 1984, the district court entered an order granting respondent's motion for summary judg-

ment and denying the petition for the writ. *United States ex rel. Miller v. Greer*, No. 83–3254 (C.D.Ill. Aug. 27, 1984). The district court essentially adopted the Illinois Supreme Court's analysis, holding that the state's violation of *Doyle* was harmless beyond a reasonable doubt.

## II.

The Supreme Court held in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), that "the use for impeachment purposes of [a] petitioner['s] silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." *Id.* at 619, 96 S.Ct. 2245. Respondent's first argument in response to petitioner's appeal is that, despite the fact that the Illinois Appellate Court, the Illinois Supreme Court, and the United States District Court all held otherwise, there was no *Doyle* violation in this case.

Petitioner was not given *Miranda* warnings when he and Williams were arrested at a gas station in the early morning hours of February 10, 1980, for unlawful use of weapons (a handgun was found under the seat of the car that they were driving). Later that day, Williams gave a formal statement to the police implicating himself, Armstrong, and petitioner in Gorsuch's murder. Immediately following Williams's statement, at 2:57 p.m., petitioner was given *Miranda* warnings and arrested for the murder, kidnapping, and robbery of Neil Gorsuch.

Respondent concedes that petitioner was given *Miranda* warnings at the time of his arrest for the instant offenses and that any comment referring to his silence after that arrest would be improper. He nevertheless argues that the prosecutor's reference to petitioner's post-arrest silence could be construed as referring to the period between petitioner's arrest on the weapons charge, when no *Miranda* warnings were given, and petitioner's arrest on the murder charge and receipt of *Miranda* warnings later that afternoon, and that the prosecu-

tor's comment therefore did not violate petitioner's due process rights. *See Fletcher v. Weir*, 455 U.S. 603, 607, 102 S.Ct. 1309, 1312, 71 L.Ed.2d 490 (1982) (not improper to comment on post-arrest silence in the absence of *Miranda* warnings, which affirmatively assure a defendant that he has the right to remain silent); *Feela v. Israel*, 727 F.2d 151, 157 (7th Cir.1984) (same). Respondent asserts that it would have been natural for petitioner to have attempted to exculpate himself from any involvement in the Gorsuch murder during the period following his initial arrest because he was arrested with Williams and knew of Williams's involvement in the crime.

We cannot agree with the respondent's contentions. Although the prosecutor's question may have been intended to refer in part to petitioner's silence following his arrest on the weapons charge, it cannot seriously be maintained that the prosecutor intended no reference to petitioner's silence after his arrest for Neil Gorsuch's murder. From the jury's standpoint, the only reasonable inference to be drawn from the prosecutor's question—"Why didn't you tell this story to anybody when you got arrested?"—is that the petitioner was silent at the time of his arrest for the offenses for which he was then on trial.

We also disagree with the respondent's assertion that it would have been "natural" for petitioner to attempt to exculpate himself when he was arrested on the weapons charge merely because he was with Randy Williams at the time. Although Williams may already have been a suspect in the murder because he had been seen leaving the tavern with Gorsuch, petitioner was never even implicated in the crime until Williams gave his formal statement to the police later that day. It is not in the least bit natural for a person to try to exculpate himself for a crime of which he has not been accused. Indeed, the statement—"I did not kill anybody"—upon being arrested for unlawful use of weapons, drunken driving, or running a red light, would tend only to inculpate, rather than exculpate, the arrestee. ▪

▪ We conclude, as did the courts before us, that petitioner was advised of his right to remain silent for purposes of *Doyle* when he was given the *Miranda* warnings at the time of his arrest for the offenses charged at trial. *See People v. Miller*, 96 Ill.2d at 394, 59 Ill.Dec. at 853, 450 N.E.2d at 326. The prosecutor's reference to petitioner's silence at the time of his arrest therefore violated petitioner's constitutional right to remain silent. *Id.*

▪ The conclusion that there was a *Doyle* violation in this case does not end the inquiry, however, since constitutional errors of this sort can in certain circumstances constitute harmless error. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *United States ex rel. Burke v. Greer*, 756 F.2d 1295, 1302 (7th Cir.1985); *Hawkins v. LeFevre*, 758 F.2d 866, 877 (2d Cir.1985). In order to satisfy its burden of proving that the constitutional error was harmless, the government must prove beyond a reasonable doubt that the defendant would have been convicted absent the violation. *Burke*, 756 F.2d at 1302. The case against the defendant must be "overwhelming" in order to apply the harmless error rule. *United States v. Shue*, 766 F.2d 1122, 1132–33 (7th Cir.1985); *Burke*, 756 F.2d at 1302.

▪ The Illinois Supreme Court based its conclusion that the prosecutor's improper comment was harmless error on three factors: the comment was a single, isolated reference during the course of a lengthy trial, Williams's testimony was corroborated in many respects, and the trial judge gave a curative instruction. We cannot agree with the Court's reliance on these factors. Beginning with the Court's observation that the prosecutor's improper comment was but a single, isolated reference to petitioner's post-arrest silence during the course of a week-long trial, we believe that the timing of the comment overshadows its singularity. No matter how many days a trial may have lasted or how many witnesses may have appeared, the jury will pay close attention when a defendant accused

of crimes as horrible as these takes the stand. That attention undoubtedly is heightened when the prosecutor rises to attack the defendant's story on cross-examination. When one of the first questions out of the prosecutor's mouth is "Why didn't you tell this story to anybody when you got arrested?", the comment cannot be so easily dismissed as a single, isolated reference.

■ Turning to the corroboration of Randy Williams's testimony, the bulk of the testimony and physical evidence cited by the Illinois Supreme Court corroborated portions of Randy Williams's testimony that the petitioner did not even dispute: (1) that Williams, his brother Rick, Armstrong, and Gorsuch left the tavern together at approximately 1:30 a.m. on the morning of February 9; (2) that Gorsuch was beaten and then killed on the bridge by several shotgun blasts to the head; (3) that Armstrong went to the trailer where petitioner was staying sometime that morning, talked to him briefly, and then left with him; and (4) that Williams and petitioner had breakfast together near daybreak that morning at Dottie's Cafe.

With regard to the crucial part of Williams's testimony—his assertion that petitioner took part in the murder of Neil Gorsuch—there was no direct corroborative evidence [2] and petitioner denied being present when the murder was committed. There was no reason to find petitioner's testimony particularly incredible or Randy Williams's testimony particularly credible on this point, especially since accomplice testimony of this kind is inherently unreliable, often motivated by factors such as a promise of leniency or immunity and malice toward the accused. In short, this evidence does not come close to constituting the overwhelming evidence necessary to overcome constitutional error such as a *Doyle* violation. *Compare United States v. Hasting*, 461 U.S. 499, 511–12, 103 S.Ct. 1974,

1981-82, 76 L.Ed.2d 96 (1983) (finding harmless error where victims promptly picked the defendants out of a line-up, neutral witnesses corroborated critical aspects of the victims' testimony, property of the victims was found in one of the defendant's possession, and there was identification of the car used and one of the defendant's fingerprints); *Feela v. Israel*, 727 F.2d at 157 (finding harmless error where defendant had an implausible alibi and was arrested near the scene of the robbery with the vest, gloves, and handgun used by the robber); *United States v. Wilkins*, 659 F.2d 769, 774 (7th Cir.) (finding harmless error where defendant was arrested in the getaway car with the stolen money and guns several blocks from the bank), *cert. denied*, 454 U.S. 1102, 102 S.Ct. 681, 70 L.Ed.2d 646 (1981). The crux of this trial was whether the jury believed the Williamses or believed the petitioner. The prosecutor's improper inquiry, magnified by coming at a time when the jury's attention was focused on the petitioner, cast substantial doubt on petitioner's credibility. We simply cannot say beyond a reasonable doubt that the prosecutor's comment had no effect on the jury's assessment of petitioner's credibility, and hence on the jury's verdict.

■ Finally, in regard to the allegedly curative instruction given by the trial judge, we believe that the judge's admonition to ignore the prosecutor's reference to petitioner's post-arrest silence "for the time being" was simply too ambiguous in the setting of a clear-cut *Doyle* violation to cure the effect of the prosecutor's improper comment. The record reflects that the judge was apparently unaware that the prosecutor's question was a violation of *Doyle*. At the side bar conference following defense counsel's objection to the prosecutor's comment, the judge stated: "I will do some checking during the time he is on the witness stand on Cross Examination

2. Rick Williams testified that on the evening following Gorsuch's murder, Randy Williams and petitioner told Rick that they had killed Gorsuch and that Rick should keep quiet about it if the police began asking questions. Petition-

er denied being present when this conversation took place. At most, this testimony provides indirect evidence that petitioner was involved in the murder.

and if I find where he can, I will let him ask the question." Thus, the instruction that the judge gave to the jury reflected exactly what he was thinking at the time, which was that the jury might be able to consider the prosecutor's comment and the implications arising therefrom at some point in the future. Because of the important Fifth Amendment guarantees protected by *Doyle*, we hesitate to hold that anything other than a clear, immediate, and unambiguous cautionary instruction can be sufficient to cure a *Doyle* violation. *See Burke*, 756 F.2d at 1303 (final jury instructions ordinarily not sufficient to cure constitutional errors). Even if we were willing to consider a somewhat imperfect cautionary instruction to be sufficient under certain circumstances, we could not conclude that the *Doyle* violation in the circumstances of this case was rendered harmless by the trial judge's obscure instruction.

In sum, we hold that the state has not met its burden of proving that the prosecutor's blatant violation of *Doyle* was harmless beyond a reasonable doubt. In reaching this conclusion, we are not unmindful of the appropriateness of deferring to the state courts' assessment of the impact of prosecutorial error on state trials. However, we are respectfully unable to accept the Illinois Supreme Court's analysis in this case. Because the crucial issue at trial was credibility, the *Doyle* violation went to the heart of the truth-seeking process. The evidence against petitioner was not overwhelming, his story was not implausible, and the trial court's cautionary instruction was insufficient to cure the error. In these circumstances, we must conclude that it is not clear beyond a reasonable doubt that, absent the prosecutor's improper comment, the jury would have found petitioner guilty of the crimes for which he was convicted.

### III.

In conclusion, the prosecutor committed constitutional error when he referred at trial to petitioner's post-arrest silence. When viewed in the context of the entire trial, the state has not met its burden of proving that the error was harmless beyond a reasonable doubt. The district court's judgment denying the petition for a writ of habeas corpus is accordingly reversed, and the matter remanded with instructions to order petitioner's release from custody unless the state retries petitioner within the 120-day time limit.

CUMMINGS, Chief Judge, dissenting.

Regretting my inability to join in my colleagues' opinion, I dissent for the reasons given by the Illinois Supreme Court in *People v. Miller*, 96 Ill.2d 385, 70 Ill.Dec. 849, 450 N.E.2d 322 (1983).