**UNITED STATES of America ex rel. James LAVIS, Petitioner,**

v.

**Michael O'LEARY, Warden, Respondent.**

No. 86 C 3285.

United States District Court, N.D. Illinois, E.D.

March 17, 1988.

James Lavis, pro se.

Neil F. Hartigan, Atty. Gen. of Illinois, Jack Donatelli, Asst. Atty. Gen., Criminal Appeals Div., Chicago, Ill., for respondent.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Petitioner James Lavis ("Petitioner") seeks a writ of habeas corpus. He claims that the State of Illinois ("the State") violated his Fifth and Fourteenth Amendment rights by questioning him after he had requested counsel, and that the State appellate court erred in ruling that admitting his inculpatory statements into evidence constituted harmless error at his trial. For the reasons set forth below, the petition for habeas relief will be granted.

### FACTS

On October 2, 1984, Petitioner was found guilty of robbery by a jury in Cook County, Illinois. The charge arose out of the 9:15 p.m. robbery of a Citgo gas station on the night of October 6, 1983. The robbery was reported by the station cashier, Helen Ortiz, who had come face to face with the perpetrator and provided the investigating police officers with a detailed description of him.

At 12:30 a.m. on October 8, Petitioner was spotted by police officers while he was suspiciously looking over a parked car. The officers stopped him and performed a *Terry* search. The officers allegedly found narcotics in his pocket—the narcotics charges were later dropped—and placed him under arrest.

At some point, the arresting officers noted that Petitioner generally fit the description of the man who had robbed the Citgo station the previous night. The description was for a man 5'8" to 6'0" tall, with a ruddy complexion, brown bushy hair parted down the middle, a burgundy jogging jacket and blue eyes. Petitioner fit the bill in all respects, except that he has brown eyes, not blue.

At the police station, Petitioner requested a lawyer after he was advised of the *Miranda* warnings by the arresting officers. A short time later, he was placed in a lineup with four other men, three with moustaches and one substantially shorter than he. Ms. Ortiz identified Petitioner as the man who had robbed the gas station.

At this point, Petitioner was informed of the result of the lineup, again given his *Miranda* warnings, and asked if he would give a statement. He did. He insisted that, at the time of the robbery on October 6, he was with his girlfriend, Cathy Kroger. According to Petitioner, Ms. Kroger had picked him up from the police station at 8:30 p.m. on the night of the robbery— he had been held in jail since 12:30 p.m. that day as a result of a disorderly conduct charge—and spent the remainder of the evening with him.

After Petitioner gave this statement, at around 3:45 a.m., a police officer and Assistant State's Attorney Laurie Levin went to Ms. Kroger's house to check out Petitioner's alibi. Ms. Kroger denied having been with Petitioner on the night in question.

When the State officials returned to the station, they informed Petitioner of Ms. Kroger's denial. In the presence of Assist-

ant State's Attorney Levin, he admitted having committed the robbery. He refused, however, to sign a written statement to that effect.

The State's case-in-chief at trial consisted of Petitioner's inculpatory statements, Ms. Ortiz' testimony, and the results of the early morning lineup.

Petitioner did not testify, but did present an alibi defense, in which two of his friends testified that, from 7:00 p.m. until midnight on October 6, 1983, Petitioner was at their home watching baseball and playing backgammon. The problem with the alibi arose during the State's rebuttal, in which the State introduced a copy of Petitioner's release slip showing that he had not been released from custody until 8:40 p.m. on October 6. Petitioner was found guilty as charged.

On appeal to the Illinois Appellate Court, the court held that the trial court erred in permitting the State to introduce the statements made by Petitioner during the early morning investigation. *Illinois v. Lavis*, No. 84–746, slip op. (Ill.App.1st July 24, 1985). The court found that Petitioner had invoked his right to counsel during the first questioning session, and that, accordingly, any further interrogation was impermissible unless initiated by Petitioner. Although the court rejected Petitioner's allegations that the police had then beaten him into confessing, the court did find that the State had improperly resumed questioning Petitioner by informing him of the results of the lineup, re-reading him his rights, and asking him if he wished to comment, as this violation of the *Miranda* rules precluded a determination that Petitioner had waived his Fifth Amendment right to counsel. Accordingly, the court reasoned, the State had violated defendant's Fifth Amendment rights.

The court did not, however, reverse Petitioner's conviction. Instead, it held that the admission of Petitioner's inculpatory statements was harmless error. According to the court, the identification of Petitioner by Ms. Ortiz, in court and at the lineup, combined with the weakness of Petitioner's alibi, provided "overwhelming evidence of

[petitioner's] guilt." Slip op. at 7. Accordingly, the court ruled, the conviction could stand. On December 4, 1985, the Supreme Court of Illinois declined to hear Petitioner's appeal from that judgment.

## DISCUSSION

Federal courts have long agreed that not all violations of the federal constitution occurring during state trials necessitate reversals of guilty verdicts. Where the errors are harmless—where the "other evidence of guilt is overwhelming," or "there is [not] a reasonable probability that the errors complained of might have contributed to the conviction," *United States ex rel. Savory v. Lane*, 832 F.2d 1011, 1020–21 (7th Cir.1987) (citations omitted)—convictions may stand notwithstanding the existence of errors of constitutional magnitude.

The determination that a constitutional violation is "harmless is ... a ... question ... of federal *law*, and not of fact." *United States ex rel. Savory v. Lane*, 832 F.2d at 1018. Thus, although the federal court must presume that subsidiary findings of fact by the state court are correct, *see* 28 U.S.C. § 2254(d), the ultimate determination of whether the existence of constitutional error mandates a new trial requires a *de novo* determination by the federal court. *Id.* at 1018–19; *Lacy v. Gabriel*, 567 F.Supp. 467 (D.Mass.1983) ("Harmlessness ... is a conclusion of law, and therefore not entitled to the presumption of correctness required by 28 U.S.C. § 2254(d)."), *aff'd*, 732 F.2d 7 (1st Cir.1984), *cert. denied*, 469 U.S. 861, 105 S.Ct. 195, 83 L.Ed.2d 128 (1985). "In order to satisfy its burden of proving that the constitutional error was harmless, the government must prove beyond a reasonable doubt [to the federal court] that the defendant would have been convicted absent the violation." *United States ex rel. Miller v. Greer*, 772 F.2d 293, 297 (7th Cir.1985).

In this case, this court must reject the Illinois Appellate Court's ruling that the admission of Petitioner's statements constituted harmless error. While it may well be true that the description, line-up identification, and testimony by Ms. Ortiz would

provide *sufficient* evidence to support a guilty verdict, this evidence, standing alone, simply does not constitute "overwhelming" evidence of guilt. Assuming *arguendo* that such evidence, provided by a single witness, could ever be considered "overwhelming," *compare United States ex rel. Eddington v. Lane*, 617 F.Supp. 392 (D.C.Ill.1985) (eye-witness identification was sufficiently overwhelming to render Sixth Amendment violation harmless where the identification was corroborated by substantial evidence), it clearly is not in this case. Ms. Ortiz' description misstated a fundamental feature—Petitioner's eye color; the lineup identification was far from airtight—Petitioner was the only participant even approaching the description Ms. Ortiz had earlier provided; and Ms. Ortiz' trial testimony contained a number of inconsistencies—most significantly, her admission, notwithstanding her grand jury testimony to the contrary, that she generally does wear eyeglasses.

Moreover, it seems abundantly clear that the Petitioner's inculpatory statements—including a confession to the alleged crime—contributed to the jury's verdict. Indeed, fully twenty percent of the government's opening and closing arguments—measured by transcript lines—focused solely on Petitioner's statements and the information derived from them. While these statements may not have been the centerpieces of the State's case, they certainly represented an extremely valuable part of it.

In sum, the State simply cannot prove beyond a reasonable doubt that, absent the constitutional violation, it would have obtained a guilty verdict against Petitioner. The conviction cannot stand.

## CONCLUSION

Accordingly, Petitioner's petition for writ of habeas corpus is granted. The State is ordered to release Petitioner from custody unless it retries him within 120 days.