**UNITED STATES of America, Plaintiff,**

v.

**Paul N. JOHNSON, Patrick C. Remigio, Dennis Craig Smith, Defendants.**

**Crim. Nos. 83–10057–01 to 83–10057–03.**

United States District Court,
D. Kansas.

Oct. 31, 1983.

---

Jack Williams, Asst. U.S. Atty., Wichita, Kan., for plaintiff.

David McClure, Wichita, Kan., for Johnson.

Fred Johnson, Wichita, Kan., for Remigio.

Charles D. Anderson, Federal Public Defender, Wichita, Kan., for Smith.

## MEMORANDUM ORDER

KELLY, District Judge.

This matter is before the Court on the defendants' motions to suppress. Defendants are charged with the unlawful manufacture of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846. Defendants move to suppress certain chemicals, chemical formulas, and chemistry apparatus and equipment seized pursuant to a federal search warrant. Defendants contend the officials executing the warrant violated the knock and announce statute, 18 U.S.C. § 3109, when the officials entered the residence without announcement immediately after one of the defendants peered out of an open door. The Court finds that the government officials did not violate the statute and that the evidence seized shall be admitted into evidence.

The Federal Bureau of Investigation, Drug Enforcement Administration, and the Kansas Bureau of Investigation investigated the defendants for five months prior to the search in question. The house that was searched was the residence of defendant Dennis Craig Smith. The two other defendants were present in the house on the evening of the search at the invitation of Mr. Smith.

On June 16, 1983, the date of the search, the federal and local officials had the house under surveillance. During the day, the agents observed the delivery to the house of a chemical that is critical to the manufacture of methamphetamine. In the early evening, they smelled the distinctive odor of ether emanating from the house. That night, the officers obtained a federal search warrant. Shortly before midnight, ten or twelve plain-clothes agents split into two teams, with half of the agents proceeding to the front door and the other half proceeding in virtual single file to the back door. Just as the agent leading the rear-

door team reached the back door of the residence, the defendant, Mr. Johnson, peered out of the open, screened back door. The first agents immediately entered through the open door and subdued Mr. Johnson in the landing, with guns drawn. Simultaneously, the other agents entered through the open door and into the kitchen, shouting "Police, police" and "FBI." The officers did not announce their identity or purpose prior to entering the residence. The officials took the three defendants into custody and seized various chemicals, chemical formulas, and chemistry apparatus and equipment.

The layout of the house was such that the screened back door opened from the outside porch onto a 3′ × 3′ landing inside the house. A total of three doorways emerged from the 3′ × 3′ landing: the screen door leading outside to the porch, a door leading into the kitchen, and a door leading down into the basement. The door between the landing and the kitchen was ajar prior to the officials' entry into the residence.

Defendants contend that the method of executing the search warrant was illegal, in violation of the knock and announce statute, and that the fruits of the search therefore must be suppressed. The defendants urge upon the Court a factual finding that both the rear screened door and the interior door between the landing and the kitchen were closed. The Court finds the evidence to be otherwise.

The evidence showed that the rear screened door was open. Mr. Remigio testified that he thought it was open. Mr. Johnson testified that he was standing "in front of an open door, and [he] stuck [his] head out of the back door." There may be an ambiguity as to whether the "open door" to which he referred was the door leading down into the basement or the door leading to the porch outside. In any event, in order to put one's head out of a door, the door must be open.

The evidence regarding the position of the interior door between the landing and the kitchen is conflicting. Defendant Remigio was unsure of its position, testifying that Mr. Johnson left the kitchen to go outside to get some fresh air and that he "may have left it partially ajar." Defendant Johnson testified that he had his face to the wall as the agents were detaining him in the landing, but that he "heard" the other agents open the kitchen door. The Court assumes the kitchen door was ajar, although this fact is not critical to the ruling on this motion. Once law enforcement officers lawfully enter a house, they need not comply with the knock and announce statute before entering every other closed door within the residence. *United States v. Crawford*, 657 F.2d 1041 (9th Cir.1981).

The issue in this case is whether the officials' entry into the house at the time the defendant stood at and peered out of the open back door was unlawful because of the officials' failure to announce their authority and purpose. The statute provides as follows:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

18 U.S.C. § 3109.

The purpose of the statute is to restrict the authority of the government to intrude upon the privacy of its citizens, a concept firmly rooted in Anglo-American jurisprudence. *Miller v. United States*, 357 U.S. 301, 306–08, 78 S.Ct. 1190, 1194–95, 2 L.Ed.2d 1332 (1958). A second purpose is to protect law enforcement officers who might be mistaken as unlawful intruders if they enter a residence unannounced. *Id.* at 312 n. 12, 78 S.Ct. at 1197 n. 12.

The statute requires law enforcement officials to announce their authority and purpose and be denied admittance before they break down the door of a house. *Id.* at 306, 78 S.Ct. at 1194. In *Sabbath v. United States*, 391 U.S. 585, 88 S.Ct. 1755, 20

L.Ed.2d 828 (1968), the Court declined to find that the use of force was an essential element of the statute. The Court in that case found that unlatching a closed, unlocked door was an "unannounced intrusion" in violation of the statute. *Id.* at 590, 88 S.Ct. at 1758.

■■■■ The facts of the case at bar, however, establish that the defendant was present at the door and that the door was open at the time the officials entered the house. These two facts obviate any illegal entry by governmental officials. First, police entry through an open door in the presence of the dwelling's occupant does not constitute a breaking into or a breaking down the door of a private home as comprehended by the statute. Nor did the entry constitute an "unannounced intrusion" as proscribed in *Sabbath, supra*, because the defendant was present at the door and observed the officials before they entered the house. Finally, there is little danger of invading a citizen's privacy when, as under the facts of this case, the occupant is present at the door and observes the approach of the officials. When an occupant is present before an open door, he voluntarily subjects himself to view from the outside and a contemporaneous entry is no invasion upon his seclusion.

The majority rule is that governmental entry through an open door is not a "breaking" within the meaning of the federal knock and announce statute. The Tenth Circuit has not addressed this issue.

The Ninth Circuit held that police entry through an open door did not violate the statute because the statute was founded upon common law proscribing forcible governmental invasion into a closed house. The court supported the decision with authority holding . that entry by ruse, although unannounced, did not violate the statute. *Ng Pui Yu v. United States*, 352 F.2d 626 (9th Cir.1965) (lawful entry when defendant opened his apartment door and began to step out just as customs agents were about to knock, and the officers immediately entered his apartment through the open door). *Accord, Vanella v. United States*, 371 F.2d 50 (9th Cir.1966) (lawful entry when defendant ran out of back door of his house, observed agent, and ran back into the house, and the agent followed).

The Second Circuit rule is that "breaking" as used in the statute means "forcible entry," and that the statute does not apply to police entry through an open door. *United States v. Conti*, 361 F.2d 153, 157 (2d Cir.1966), *vacated on other grounds*, 390 U.S. 204, 88 S.Ct. 899, 19 L.Ed.2d 1035 (1968) (lawful entry when defendant arrived and unlocked his apartment door, and IRS agents walked past him and into his apartment). *See United States v. Monticallos*, 349 F.2d 80, 82 (2d Cir.1965) (lawful entry when narcotics agents followed prospective customer through defendant's open apartment door); *United States v. Garnes*, 258 F.2d 530, 533 (2d Cir.1958), *cert. denied*, 359 U.S. 937, 79 S.Ct. 651, 3 L.Ed.2d 637 (1959).

The Fifth and Seventh Circuits hold that there is no breaking within the meaning of the statute when police enter through an open door. *United States v. Lopez*, 475 F.2d 537 (7th Cir.), *cert. denied*, 414 U.S. 839, 94 S.Ct. 89, 38 L.Ed.2d 74 (1973) (lawful entry when narcotics agents waited in motel corridor and entered defendant's motel room immediately after he opened the door to leave); *United States v. Johns*, 466 F.2d 1364 (5th Cir.1972) (lawful entry when FBI agents walked through the open door of a building used for gambling); *United States v. Rowlette*, 397 F.2d 475 (7th Cir. 1968) (lawful entry when narcotics agents entered defendant's open motel room door).

The Sixth and Eighth Circuits upheld government entries through open doors, although they did not expressly hold that the statute did not apply to an entry through an open door. *United States v. McClard*, 333 F.Supp. 158, 167 (E.D.Ark. 1971), *aff'd*, 462 F.2d 488 (8th Cir.) (per curiam), *cert. denied*, 409 U.S. 988, 93 S.Ct. 345, 34 L.Ed.2d 255 (1972) (government entry through the open door of a barn used as a whiskey distillery upheld because the conduct did not constitute a search and the defendant knew the identity and purpose of the police); *United States v. Williams*, 351

**1002**

F.2d 475 (6th Cir.1958) (narcotic agent's entry through open door held lawful on Fourth Amendment reasonableness standard).

The District of Columbia Circuit established the minority rule, defining "break" under the statute to mean "enter without permission." *Hair v. United States*, 289 F.2d 894 (D.C.Cir.1961) (occupant opened door to leave, saw police, and ran back into the house, and the police took chase). The court ruled that police entry through the open door was illegal because it was not peaceful and was without the occupant's permission. *See also, United States v. Burruss*, 306 F.Supp. 915 (E.D.Pa.1969) (court assumed without deciding that entry through an open door is illegal).

The Court is persuaded by the majority rule. The Court holds that, under the facts of this case, when government officials entered the house through an open door and in the presence of the defendants, the government officials were not required to comply with the knock and announce statute, 18 U.S.C. § 3109, and the entry was lawful.

IT IS ACCORDINGLY ORDERED this 31st day of October, 1983, that the defendants' motions to suppress are overruled. The case is set for trial on the 6th day of December, 1983.