UNITED STATES of America,
Plaintiff-Appellee,

v.

Patrick C. REMIGIO, a/k/a Joe
Cuervo, Defendant-Appellant.

No. 84–1280.

United States Court of Appeals,
Tenth Circuit.

July 17, 1985.

Fred A. Johnson, Wichita, Kan., for defendant-appellant.

Jackie N. Williams, Asst. U.S. Atty., Wichita, Kan. (Benjamin L. Burgess, Jr., U.S. Atty., and Emily B. Metzger, Asst. U.S. Atty., Wichita, Kan., with him on brief), for plaintiff-appellee.

Before BARRETT and SETH, Circuit Judges, and SEAY, District Judge *.

SEAY, District Judge.

This appeal arises from verdicts finding the defendant-appellant, Patrick C. Remigio, guilty of unlawfully conspiring to manufacture methamphetamines, and unlawfully attempting to manufacture methamphetamines, both contrary to 21 U.S.C. § 841(a)(1), and both in violation of 21 U.S.C. § 846. Two co-defendants charged in the same indictment had earlier pled guilty to one or more counts, and do not join in this appeal.

Remigio's appeal alleges four separate errors: (1) the trial court overruled his motion to suppress; (2) the trial court overruled his motion for acquittal; (3) the trial court allowed into evidence extrajudicial statements of co-conspirators; and (4) the prosecutor commented on defendant's exercise of his right to remain silent at the time of his arrest. For the reasons set forth below, the Court finds appellant's claims are without merit, and the conviction should be affirmed.

In his first assignment of error, Remigio alleges the trial court erred in overruling his motion to suppress, 573 F.Supp. 998 (D.Kan.1983). Remigio's claim is based on his allegation that the officers, in the execution of a search warrant, failed to knock and announce prior to entering the residence, as is required by 18 U.S.C. § 3109.[1]

The evidence surrounding the search and seizure episode was conflicting. After having heard all the evidence, during a hearing on the motion to suppress, the trial court found the facts to be as those herein recited.

Federal and State law enforcement agents had been investigating Remigio and the two co-defendants for five months prior to the search. On the day of the search, the agents had the residence of one of the co-defendants under surveillance. During

---

* Honorable Frank H. Seay, Chief United States District Judge for the Eastern District of Oklahoma, sitting by designation.

1.  18 U.S.C. § 3109 provides:
    The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

the day, the agents observed the delivery to the house of a chemical critical to the manufacturing of methamphetamine. The agents later smelled the distinctive odor of ether, a result of the methamphetamine manufacturing process, emanating from the house. The agents obtained a federal search warrant later that evening. Shortly before midnight, the agents split into two teams, with half the agents proceeding to the front door of the residence, and the other half to the back door. As the lead agent for the back-door team was about to reach the rear door of the residence, the co-defendant Johnson opened the screened back door and peered out. The first agent immediately entered through the open door and subdued Johnson on the landing. Simultaneously, the other agents entered through the open door and proceeded through another open door into the kitchen, shouting "Police" and "FBI". The officers and agents did not announce their identity or purpose prior to entering the residence. The officials took the three defendants into custody and seized various chemicals, formulas, and chemical equipment.

■ Remigio disputes the facts as recited above, claiming that the interior door to the kitchen was closed.[2] This Court, however, may not disturb the findings of fact rendered by the District Court unless it is convinced the findings are clearly erroneous. After carefully reviewing the record below in the light most favorable to the government, this Court cannot say that the District Court's findings were clearly erroneous. Accordingly, this Court must accept the findings as reported. *United States v. Miles*, 449 F.2d 1272, 1274 (10th Cir.1971); *Arnold v. United States*, 432 F.2d 871, 874 (10th Cir.1970); *Todd v. United States*, 362 F.2d 531, 532 (10th Cir.), *cert. denied*, 385 U.S. 994, 87 S.Ct. 608, 17 L.Ed.2d 454 (1966), *reh'g denied*, 386 U.S. 929, 87 S.Ct. 877, 17 L.Ed.2d 803 (1967).

Having established the doors were open at the time the co-defendant was looking outside, the issue becomes whether the officials' entry into the house was unlawful because of their failure to announce their authority and purpose.

■ The purpose of 18 U.S.C. § 3109 is to restrict the authority of the government to intrude upon the privacy of its citizens, and to protect law enforcement officers who might be mistaken as unlawful intruders if they were to enter a residence unannounced. *Miller v. United States*, 357 U.S. 301, 306–08, 312 n. 12, 78 S.Ct. 1190, 1198 n. 12, 2 L.Ed.2d 1332 (1958).

The statute requires law enforcement officials to announce their authority and purpose, and to be denied admittance, before they break down the door of a house. *Id.* at 306, 78 S.Ct. at 1194. The United States Supreme Court, in *Sabbath v. United States*, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968), found that the use of force was not an essential element of the statute, and ruled that unlatching a closed, unlocked door was an "unannounced intrusion" in violation of the statute. *Id.* at 590, 88 S.Ct. at 1758. Whether entry through an open door is an "unannounced intrusion" is another matter.

This Circuit has never addressed the issue of whether officials must comply with the knock and announce statute prior to entering through an open door. Other Circuits have addressed the issue, however, and the majority rule is that entry through an open door is not a "breaking" within the meaning of the federal knock and announce statute, 18 U.S.C. § 3109. *United States v. Lopez*, 475 F.2d 537, 541 (7th Cir.), *cert. denied*, 414 U.S. 839, 94 S.Ct. 89, 38 L.Ed.2d 74 (1973); *United States v. Johns*, 466 F.2d 1364, 1365 (5th Cir.1972); *United States v. Conti*, 361 F.2d 153, 157 (2d Cir. 1966), *vacated on other grounds*, 390 U.S. 204, 88 S.Ct. 899, 19 L.Ed.2d 1035 (1968); *Ng Pui Yu v. United States*, 352 F.2d 626,

---

**2.** This fact, of itself, may not have been critical to the Court's ruling. Once law enforcement officials lawfully enter a house, they need not always comply with the knock and announce statute before entering every other closed door within the residence. *See United States v. Crawford*, 657 F.2d 1041, 1045 (9th Cir.1981).

632 (9th Cir.1965); *United States v. Williams,* 351 F.2d 475, 477 (6th Cir.1965), *cert. denied,* 383 U.S. 917, 86 S.Ct. 910, 15 L.Ed.2d 671 (1966). *Contra Hair v. United States,* 289 F.2d 894, 895–96 (D.C.Cir. 1961).

The facts of this case establish that a defendant was present at the door and that the door was open at the time the officials entered the house. The defendant observed the officials before they entered the house.

■ This Court is persuaded by the majority rule. We hold that government officials, armed with a warrant, entering a house through an open door and in the presence of a defendant, need not comply with the provisions of 18 U.S.C. § 3109. Accordingly, the entry in this case was lawful, and the motion to suppress was properly denied.

In his second assignment of error, Remigio contends the trial court erred in overruling his motion for acquittal on Count II of the Indictment. That count charged an attempt to manufacture methamphetamines, rather than the substantive offense of manufacturing the controlled substance. Remigio argues that the government's evidence could only be construed as having established the substantive offense itself, rather than the attempt.

■ In order to be convicted of an attempt, the government must prove "an intent to engage in criminal conduct and the performance of acts which constitute a 'substantial step' towards the commission of the substantive offense." *United States v. Manley,* 632 F.2d 978, 987 (10th Cir.1980), *cert. denied, sub nom. Williams v. United States,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981).

■ The record in the present case fully establishes the commission of the necessary elements of attempt by Remigio. That the government went beyond the proof required for an attempt, and established the substantive offense as well, is of no consequence. The crime of attempt is a lesser included offense of the substantive crime. *United States v. Pino,* 608 F.2d 1001, 1003–04 (4th Cir.1979); *United States v. Marin,* 513 F.2d 974, 976 (2d Cir.1975). Moreover, the "substantial step" element of an attempt may be as much as, or less than, the actual commission of the crime. *See United States v. Manley,* 632 F.2d at 987–88. Accordingly, the United States could have charged Remigio under either the attempt or the substantive crime of manufacturing methamphetamines. The government chose the attempt statute, and proof of the substantive crime at trial was proof of the lesser included offense of attempt. Therefore, the trial court was correct in denying Remigio's motion for acquittal.

Remigio next contends the trial court erred by admitting into evidence statements of co-conspirators who were not present at trial. Remigio argues that the evidence was allowed to be introduced without a prior prima facia showing that a conspiracy existed and that Remigio was a participant therein.

■ Rule 801(d)(2)(E) of the Federal Rules of Evidence provides that statements offered against a party which are made by co-conspirators of a party during the course and in furtherance of the conspiracy, are not hearsay. The statements of a party's co-conspirator are admissible if the trial judge determines it is more likely than not that the conspiracy existed, that the declarant and defendant were members of the conspiracy, and that the statements were made in furtherance of the conspiracy. *United States v. Andrews,* 585 F.2d 961, 965 (10th Cir.1978). *See United States v. Petersen,* 611 F.2d 1313, 1327 (10th Cir.1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 854 (1980).

The record below more than adequately supports the trial judge's decision to allow into evidence the co-conspirator's statements. The evidence, prior to the introduction of the statements, showed: (1) the co-defendants Johnson and Smith used aliases, obtained chemicals necessary to the manufacturing of methamphetamines, and

used Smith's house to manufacture the controlled substance; (2) an individual identifying himself as Joe Cuervo telephonically ordered from a DEA storefront operation chemicals necessary for the manufacturing process; (3) using the alias Joe Cuervo, Remigio picked up the chemicals and delivered them to co-defendant Johnson's residence, taking a circuitous route home when he spotted law enforcement officials; (4) the co-defendants ordered chemicals and took them to co-defendant Johnson's residence; (5) Johnson had a laboratory set up in Remigio's residence for manufacturing methamphetamines, which was moved to Smith's residence the day before the execution of the warrant; and (6) when the warrant was executed, law enforcement officials observed Remigio in Smith's residence stirring a liquid later found to contain methamphetamine.

▉ In light of this independent evidence, adduced at trial prior to the admission of the evidence at issue, as requested in *United States v. Pilling*, 721 F.2d 286 (10th Cir.1983), the trial court was more than justified in finding it more likely than not that a conspiracy existed and that Remigio was a participant therein. Accordingly, the Court finds the statements of the co-conspirator made in furtherance of the conspiracy were properly admitted into evidence.

Finally, during the trial and within hearing of the jury, the prosecutor for the government commented on the defendant's exercise of his right to remain silent at the time of his arrest, after the *Miranda* warnings had been read to him. Remigio argues that such conduct is reversible error.

The prosecutorial comments to which the appellant refers occurred during the prosecutor's cross-examination of Remigio, and consist solely of the following remarks:

BURGESS [prosecutor]: Mr. Remigio, I believe one of the last questions that you answered on direct examination was that you did not have any kind of intent criminal intent to do anything this particular night of June 16th, 1983; is that what you testified?

REMIGIO [defendant]: I wasn't intending to do anything illegal.

BURGESS: On that particular evening after the arrests were effected, you were advised of your rights with regard to making statements, were you not?

REMIGIO: I believe so.

BURGESS: What did you do? Did you make a statement or refuse to make a statement?

JOHNSON [defense counsel]: Objection, Your Honor, as to relevancy to whether or not he makes a statement is totally irrelevant. He has that right, exercise of that right.

BURGESS: He has waived his right to remain silent by taking the witness stand, and I think it's relevant that if he was so innocent why did he not tell the agents that evening that he was innocent.

COURT: I'm going to sustain the objection. Under the circumstances of this case and the seizure, arrest, any defendant has every right to remain totally silent and no inference should be drawn from having done so. Sustained.

BURGESS: Your Honor, I completely agree with that. My only point being—

COURT: I know your point, Mr. Burgess. I have sustained the objection.

BURGESS: —he has now waived that right.

In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the Supreme Court held that a prosecutor's use of a defendant's post-arrest silence, which followed the giving of *Miranda* warnings, to impeach the defendant's testimony at trial was violative of the Due Process Clause of the Fourteenth Amendment. Moreover, this Circuit has consistently held that comments by prosecutors on an accused's silence were plain, fundamental error. *See United States v. Gilliland*, 586 F.2d 1384, 1390 (10th Cir.1978); *Twyman v. State of Oklahoma*, 560 F.2d 422, 424 (10th Cir. 1977), *cert. denied*, 434 U.S. 1071, 98 S.Ct. 1254, 55 L.Ed.2d 774, *reh'g denied*, 435 U.S. 962, 98 S.Ct. 1594, 55 L.Ed.2d 812

(1978); *Deats v. Rodriguez,* 477 F.2d 1023, 1024–25 (10th Cir.1973); *Johnson v. Patterson,* 475 F.2d 1066, 1067–68 (10th Cir.), *cert. denied,* 414 U.S. 878, 94 S.Ct. 64, 38 L.Ed.2d 124 (1973); *United States v. Arnold,* 425 F.2d 204, 206 (10th Cir.1970); *United States v. Noland,* 416 F.2d 588, 594 (10th Cir.), *cert. denied,* 396 U.S. 912, 90 S.Ct. 227, 24 L.Ed.2d 187 (1969).

The government contends this case is distinguishable from *Doyle* and the above-cited opinions of this Court because Remigio's counsel made timely objection to the improper question and no evidence of his silence entered the record, whereas in the cases above, the prosecutors were allowed to extensively question the defendants concerning their post-arrest silence and to comment at length on their exercise of the right to silence. This Court, however, finds no merit in the government's argument. The prosecutor in this case asked a question which was highly improper. When the answer was not forthcoming due to timely objection, the prosecutor provided the answer by stating, "I think it's relevant that if he was so innocent why did he not tell the agents that evening that he was innocent." The prosecutor made this statement in the full presence and hearing of the jury, rather than at a bench conference. The comment was undeniably calculated to impeach the credibility of the witness-defendant. Such conduct is plain, fundamental error.

■ Generally, such conduct, no matter how slight, requires reversal for a new trial. *See United States v. Arnold,* 425 F.2d at 206. If such conduct amounts to harmless error, however, reversal of the conviction would be neither an appropriate nor an efficient method of discouraging such conduct in future prosecutions. Nevertheless, since such error is of constitutional dimension, it will require a new trial unless we are convinced the error was harmless beyond a reasonable doubt after assessing the record as a whole. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 *reh'g denied,* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967); *United States v. Massey,* 687 F.2d 1348, 1353 (10th Cir.1982).

In *Massey,* we delineated five factors which are relevant to determining whether the comments are harmless, these factors include:

"1. The use to which the prosecution puts the postarrest silence.

2. Who elected to pursue the line of questioning.

3. The quantum of other evidence indicative of guilt.

4. The intensity and frequency of the reference.

5. The availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions."

687 F.2d at 1353, citing *Williams v. Zahradnick,* 632 F.2d 353, 361–62 (footnotes omitted) (4th Cir.1980).

It is true the government chose to pursue a line of questioning delving into defendant's exercise of his right to remain silent, and obviously intended to use the question for impeachment purposes. In this case, however, the question was asked but once, and it was never answered by the defendant. Timely objection was made and a curative admonishment was given to the jury immediately. Unlike the references to silence in *Doyle* and the other cases cited above, the intensity and frequency of the reference to this defendant's silence was minimal. The record is completely void of any reference to Remigio's post-arrest silence subsequent to the incident discussed above. Finally, the record before us overwhelmingly supports Remigio's conviction.

The evidence presented at trial revealed that on January 17, 1983, an individual identifying himself as J.S. Slovocek appeared at Universal Solvents of America, a Drug Enforcement Agency store front operation, and ordered and took delivery of a quantity of chemicals. Slovocek was subsequently identified as being the co-defendant Paul Johnson.

An individual identifying himself as Joe Cuervo telephoned Universal Solvents on April 22, 1983, and ordered chemicals. He

requested that the chemicals be delivered to Joe Cuervo at an address in Dodge City, Kansas. The Dodge City address was later found to be the address of Johnson.

On May 2, 1983, DEA agents, posing as UPS employees, attempted delivery of the chemicals at the above address. Johnson's mother was the only person home at the time, and she was told to have her son or his friend, Cuervo, pick up the packages at the UPS office.

On May 3, 1983, an individual identifying himself as Joe Cuervo came to the UPS office and asked for the packages. The UPS clerk and an FBI agent later identified this individual as the defendant, Remigio. Additionally, the defendant himself admitted picking up the packages.

Law enforcement agents followed Remigio and saw him leave the packages in an alley behind Johnson's residence. From there, Remigio took a circuitous route home.

On June 6, 1983, an individual identifying himself as Dennis Smith ordered chemicals from Universal Solvents, and requested delivery to an address in Dodge City, Kansas. Similar UPS arrangements to those above were made, and Smith picked up the parcel on or about June 16, 1983. The parcel was later seized from Smith's residence during the execution of the search warrant.

Prior to June 15, 1983, Johnson set up a laboratory in the kitchen of Remigio's residence. Remigio was present in his residence those days and was aware of the cooking process to manufacture methamphetamines and the resulting odor. Johnson and Smith moved the laboratory to Smith's house on June 15, 1983.

On June 16, 1983, Remigio loaned Johnson money to pick up a UPS parcel containing chemicals forwarded to Smith by Universal Solvents. Smith and Johnson picked up the parcel and proceeded directly to Smith's residence.

Agents observed Remigio, Johnson and Smith in Smith's house the evening of June 16, 1983. Remigio was seen around the laboratory apparatus, and seen carrying equipment and stirring a mixture later found to contain methamphetamines.

When the agents entered the house that evening to execute the search warrant, Remigio was found in possession of a Pyrex dish and thermometer. As a result of the search, numerous items were seized from the house, including laboratory apparatus, chemicals, formulas, and cooking utensils.

In his defense, Remigio admitted essentially all the facts outlined above, but contended he was unaware of what was being manufactured. Additionally, Remigio provided numerous explanations for using an alias, picking up packages and lending money. The jury obviously found his story incredulous.

■ The evidence, as briefly discussed above, overwhelmingly implicates Remigio in the crimes charged. His personal testimony does nothing to diminish the credibility or weight of the government's substantial evidence.

After carefully reviewing the record as a whole, we are convinced beyond a reasonable doubt that the error was harmless.

Affirmed.