# GREER, WARDEN *v.* MILLER

No. 85–2064. Argued April 27, 1987—Decided June 26, 1987

POWELL, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, O'CONNOR, and SCALIA, JJ., joined. STEVENS, J., filed an opinion concurring in the judgment, *post*, p. 767. BRENNAN, J., filed a dissenting opinion, in which MARSHALL and BLACKMUN, JJ., joined, *post*, p. 769.

*Mark L. Rotert*, Assistant Attorney General of Illinois, argued the cause for petitioner. With him on the briefs were *Neil F. Hartigan*, Attorney General, *Roma J. Stewart*, Solicitor General, and *David E. Bindi*, Assistant Attorney General.

*Gary R. Peterson* argued the cause for respondent. With him on the brief was *Daniel D. Yuhas*.*

---

*\*Leon Friedman, Vivian O. Berger*, and *Harvey Grossman* filed a brief for the American Civil Liberties Union Foundation et al. as *amicus curiae* urging affirmance.

JUSTICE POWELL delivered the opinion of the Court.

The question before us is whether a prosecutor's question at trial concerning a criminal defendant's postarrest silence requires reversal of the defendant's conviction.

## I

In 1980, Neil Gorsuch was kidnaped, robbed, and murdered after leaving a bar in Jacksonville, Illinois. Three men were charged with the crimes: Randy Williams, Clarence Armstrong, and the respondent, Charles Miller. Williams confessed, and later entered into a plea agreement under which most of the charges against him were dropped in return for his testimony at the separate trials of Armstrong and Miller.

At Miller's trial, Williams testified that he, his brother, and Armstrong had met Gorsuch in a tavern on the evening of February 8. Armstrong offered the victim a ride back to his hotel, and the four men left together at about 1:30 a.m. After Williams' brother was dropped off, Armstrong began beating Gorsuch in the back seat of the car. According to Williams' testimony, the group stopped briefly at Williams' parents' home to pick up a shotgun, and the men then drove to the trailer home where Miller was staying. Williams testified that Miller joined the group, and that they then traveled to a bridge on an isolated road. Williams stated that once there each of the three men shot Gorsuch in the head with the shotgun.

Respondent Miller took the stand on his own behalf and told a different story. On direct examination he testified that he had taken no part in the crime, but that Armstrong and Williams had come to the trailer home after the murder was committed seeking Miller's advice. Miller testified that Armstrong confessed that he and Williams had beaten and robbed Gorsuch, and that they had killed him to avoid being identified as the perpetrators.

The prosecutor began his cross-examination of Miller as follows:

> "Q: Mr. Miller, how old are you?
> "A: 23.
> "Q: Why didn't you tell this story to anybody when you got arrested?" App. 31.

Defense counsel immediately objected. Out of the hearing of the jury, Miller's lawyer requested a mistrial on the ground that the prosecutor's question violated Miller's right to remain silent after arrest. The trial judge denied the motion, but immediately sustained the objection and instructed the jury to "ignore [the] question, for the time being." *Id.*, at 32. The prosecutor did not pursue the issue further, nor did he mention it during his closing argument. At the conclusion of the presentation of evidence, defense counsel did not renew his objection or request an instruction concerning the prosecutor's question. Moreover, the judge specifically instructed the jury to "disregard questions . . . to which objections were sustained." *Id.*, at 47. Miller was convicted of murder, aggravated kidnaping, and robbery, and sentenced to 80 years in prison.

On appeal the State argued that if the prosecutor's question about Miller's postarrest silence was prohibited by this Court's decision in *Doyle* v. *Ohio*, 426 U. S. 610 (1976), the error was harmless under the standards of *Chapman* v. *California*, 386 U. S. 18 (1967).[1] The Illinois Appellate Court rejected the argument and reversed the conviction, concluding that the evidence against Miller "was not so overwhelming as to preclude all reasonable doubts about the effect of the prosecutor's comment." *State* v. *Miller*, 104 Ill. App. 3d 57, 61, 432 N. E. 2d 650, 653–654 (4th Dist. 1982). The

---

[1] In *Chapman*, the Court held that even errors of constitutional magnitude may be harmless if it is clear beyond a reasonable doubt that the error did not contribute to the defendant's conviction. 386 U. S., at 24.

Supreme Court of Illinois disagreed and reinstated the trial court's decision. *State* v. *Miller*, 96 Ill. 2d 385, 450 N. E. 2d 322 (1983). The court noted that the prosecutor's question was an isolated comment made in the course of a lengthy trial, that the jury had been instructed to disregard the question, and that the evidence properly admitted was sufficient to establish Miller's guilt beyond a reasonable doubt. *Id.*, at 396, 450 N. E. 2d, at 327. It therefore held that the error did not require reversal of the conviction.

Miller then filed a petition for a writ of habeas corpus in the Federal District Court for the Central District of Illinois. The District Court denied the petition, finding "no possibility that the prosecutor's questioning on post-arrest silence could have contributed to the conviction." App. to Pet. for Cert. C–3. A divided panel of the Court of Appeals for the Seventh Circuit reversed the District Court's decision, *United States ex rel. Miller* v. *Greer*, 772 F. 2d 293 (1985), as did the full court on reargument en banc. *United States ex rel. Miller* v. *Greer*, 789 F. 2d 438 (1986). The en banc court found that because Miller had received *Miranda*[2] warnings at the time of his arrest for the offenses in question, "[t]he prosecutor's reference to Miller's silence at the time of his arrest . . . violated his constitutional right to a fair trial." 789 F. 2d, at 442. The court further held that the error was not harmless beyond a reasonable doubt under *Chapman* v. *California*, *supra*, because "[t]he evidence against Miller was not overwhelming, his story was not implausible, and the trial court's cautionary instruction was insufficient to cure the error." 789 F. 2d, at 447. Three judges dissented, concluding that under the harmless-error standard, "this fifteen-second colloquy, alleviated by the trial judge's immediately sustaining the defendant's objection and instructing the jury to ignore the prosecutor's improper question and by a threshold jury instruction to disregard questions to which objections were sustained, did not affect the verdict." *Id.*, at

---

[2] *Miranda* v. *Arizona*, 384 U. S. 436, 467–473 (1966).

448 (Cummings, J., joined by Wood and Coffey, JJ., dissenting) (footnotes omitted; record reference omitted). Judge Easterbrook also dissented. In his view, the harmless-error standard of *Chapman* is too stringent to be applied to this case for a number of reasons: the rule of *Doyle* is prophylactic rather than innocence-protecting; the issue is presented on collateral, rather than on direct, review; the error in this case could have been cured more fully had defense counsel so requested at trial; and the violation should be viewed as prosecutorial misconduct that requires reversal only if it rendered the trial fundamentally unfair. 789 F. 2d, at 448–457.

We granted certiorari to review the Court of Appeals' determination that the prosecutor's question about the criminal defendant's postarrest silence requires reversal of the conviction in this case. 479 U. S. 983 (1986).[3] We disagree with the Court of Appeals and now reverse.

## II

The starting point of our analysis is *Doyle* v. *Ohio*, 426 U. S. 610 (1976). The petitioners in *Doyle* were arrested for selling marijuana. They were given *Miranda* warnings and made no postarrest statements about their involvement in the crime. They contended at trial that they had been

---

[3] The question presented for review in the petition for certiorari was: "Whether, when considering violations of *Doyle* v. *Ohio* in federal habeas corpus proceedings, the standard of review should be whether the error substantially affected the course of the trial rather than whether the error was harmless beyond a reasonable doubt." Pet. for Cert. i. Throughout their briefs and argument, the parties rather loosely refer to "*Doyle* violations." But the State presents extensive argument as to the proper standard for assessing a *Doyle* violation, Brief for Petitioner 24–29, stating at the beginning of its brief that the "effort to impeach respondent with his prior silence constituted an *attempted* violation of *[Doyle].*" *Id.*, at 16 (emphasis added). Miller responds to this argument. Brief for Respondent 24–37. Before reaching the question whether the harmless-error standard applies, we must be satisfied that an error of constitutional dimension occurred. This fundamental question is fairly included in the question presented for review. See this Court's Rule 21.1(a).

framed by the government informant. As part of his cross-examination, the prosecutor repeatedly asked petitioners why, if they were innocent, they did not give the explanation that they proffered at their separate trials to the police at the time of their arrest.[4] Defense counsel's timely objections to this line of questioning were overruled. Also over timely objections, the trial court allowed the prosecutor to argue petitioners' postarrest silence to the jury. 426 U. S., at 613–615, and n. 5. On review, this Court found that the *Miranda* decision "compel[led] rejection" of the contention that such questioning and argument are proper means of impeachment. 426 U. S., at 617. The Court noted that postarrest silence may not be particularly probative of guilt. We also found that because *Miranda* warnings contain an implicit assurance "that silence will carry no penalty," 426 U. S., at 618, "'it does not comport with due process to permit the prosecution during the trial to call attention to [the defendant's] silence at the time of arrest and to insist that because

---

[4] The questions by the prosecutor and the defendants' answers in these trials included:

"'Q. [I]f that is all you had to do with this and you are innocent, when [the agent] arrived on the scene why didn't you tell him?'" *Doyle* v. *Ohio*, 426 U. S., at 614.

"'Q. . . . You are innocent?

"'A. I am innocent. Yes Sir.

"'Q. That's why you told the police department and [the agent] when they arrived— . . . about your innocence?

"'A. . . . I didn't tell them about my innocence. No.'" *Id.*, at 614–615, n. 5.

"'Q. [Y]ou said instead of protesting your innocence, as you do today, you said in response to a question of [the agent],—"I don't know what you are talking about."

"'A. I believe what I said,—"What's this all about?" . . .

"'Q. All right,—But you didn't protest your innocence at that time?

"'A. Not until I knew what was going on.'" *Id.*, at 615, n. 5.

he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony,'" *id.*, at 619 (quoting *United States* v. *Hale*, 422 U. S. 171, 182–183 (1975) (WHITE, J., concurring in judgment)). Accordingly, the Court in *Doyle* held that "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." 426 U. S., at 619.

This Court has applied the holding of *Doyle* in a number of subsequent cases. These later holdings confirm that "*Doyle* rests on 'the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial.'" *Wainwright* v. *Greenfield*, 474 U. S. 284, 291 (1986) (quoting *South Dakota* v. *Neville*, 459 U. S. 553, 565 (1983)). Thus, "absen[t] the sort of affirmative assurances embodied in the *Miranda* warnings," the Constitution does not prohibit the use of a defendant's postarrest silence to impeach him at trial. *Fletcher* v. *Weir*, 455 U. S. 603, 607 (1982). See *Jenkins* v. *Anderson*, 447 U. S. 231, 240 (1980) ("[N]o governmental action induced [the defendant] to remain silent *before* arrest") (emphasis added); *Anderson* v. *Charles*, 447 U. S. 404, 408 (1980) (cross-examination respecting inconsistent postarrest statements "makes no unfair use of silence, because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent").

There is no question that Miller received the "implicit assurance" of *Miranda* warnings in this case. Thus, this prerequisite of a *Doyle* violation was met. But the holding of *Doyle* is that the Due Process Clause bars "*the use* for impeachment purposes" of a defendant's postarrest silence. 426 U. S., at 619 (emphasis added). The Court noted that "'it does not comport with due process *to permit* the prosecution during trial to call attention to [the defendant's] si-

lence.'" *Ibid.* (quoting *United States* v. *Hale, supra,* at 182–183 (WHITE, J., concurring in judgment)) (emphasis added). It is significant that in each of the cases in which this Court has applied *Doyle,* the trial court has permitted specific inquiry or argument respecting the defendant's post-*Miranda* silence. See *Jenkins* v. *Anderson, supra,* at 233–234 (extended questioning and closing argument reference); *Anderson* v. *Charles, supra,* at 405–406 (questioning); *Fletcher* v. *Weir, supra,* at 603–604 (questioning); *South Dakota* v. *Neville, supra,* at 564 (admission of refusal to take blood-alcohol test); *Wainwright* v. *Greenfield, supra,* at 285, 287 (closing argument).

In contrast to these cases, the trial court in this case did not permit the inquiry that *Doyle* forbids. Instead, the court explicitly sustained an objection to the only question that touched upon Miller's postarrest silence. No further questioning or argument with respect to Miller's silence occurred, and the court specifically advised the jury that it should disregard any questions to which an objection was sustained.[5] Unlike the prosecutor in *Doyle,* the prosecutor in this case was not "allowed to undertake impeachment on," or "permit[ted] . . . to call attention to," Miller's silence. 426 U. S., at 619, and n. 10. The fact of Miller's postarrest silence was not

---

[5] According to the dissent, we "argu[e] in effect that a single comment cannot be sufficient to constitute a *Doyle* violation." *Post,* at 770. On the contrary, we hold that the sequence of events at the trial, beginning with the single comment—but including particularly the proper and immediate action by the trial court, and the failure by defense counsel to request more specific instructions—indicates that Miller's postarrest silence was not used against him within the meaning of *Doyle.*

The dissent also finds that "the prosecutor clearly got full mileage out of his *Doyle* violation during closing argument . . . by stressing that the accomplice's testimony was credible precisely because he had *not* remained silent after arrest." *Post,* at 773, n. 3. First, whether this argument constitutes "full mileage" is certainly debatable. Second, the dissent fails to note that defense counsel did not object to that portion of the prosecutor's argument on this ground.

submitted to the jury as evidence from which it was allowed to draw any permissible inference, and thus no *Doyle* violation occurred in this case.[6]

## III

Although the prosecutor's question did not constitute a *Doyle* violation, the fact remains that the prosecutor attempted to violate the rule of *Doyle* by asking an improper question in the presence of the jury. This Court has recognized that prosecutorial misconduct may "so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly* v. *DeChristoforo*, 416 U. S. 637, 643 (1974). To constitute a due process violation, the prosecutorial misconduct must be "'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *United States* v. *Bagley*, 473 U. S. 667, 676 (1985) (quoting *United States* v. *Agurs*, 427 U. S. 97, 108 (1976)).

The Illinois Supreme Court, applying the analysis of *Chapman* v. *California*, 386 U. S. 18 (1967), found that the prosecutor's question was harmless beyond a reasonable doubt. 96 Ill. 2d, at 396, 450 N. E. 2d, at 327. We thus are convinced that it would find no due process violation under the facts of this case.[7] When a defendant contends that a pros-

---

[6] JUSTICE STEVENS believes that there was a violation of *Doyle* in this case. He nevertheless joins the judgment on the ground that "*Doyle* errors are not so fundamentally unfair that convictions must be reversed whenever the State cannot bear the heavy burden of proving that the error was harmless beyond a reasonable doubt." *Post*, at 768–769. As we conclude that "no *Doyle* violation occurred in this case," we have no occasion to consider whether *Doyle* errors may be viewed differently on collateral attack from on direct review.

[7] The Federal District Court agreed with the State Supreme Court. App. to Pet. for Cert. C–1—C–4. Because the *Chapman* harmless-error standard is more demanding than the "fundamental fairness" inquiry of the Due Process Clause, it is clear that the District Court also would have found no due process violation. Although the Court of Appeals did not specifically address the due process question, it analyzed the facts of this case fully and in detail. See *United States ex rel. Miller* v. *Greer*, 789

ecutor's question rendered his trial fundamentally unfair, it is important "as an initial matter to place th[e] remar[k] in context." *Darden* v. *Wainwright*, 477 U. S. 168, 179 (1986). See *Donnelly* v. *DeChristoforo, supra,* at 639 (determining whether "remarks, in the context of the entire trial, were sufficiently prejudicial to violate respondent's due process rights"). The sequence of events in this case—a single question, an immediate objection, and two curative instructions[8]—clearly indicates that the prosecutor's improper question did not violate Miller's due process rights. The Illinois Supreme Court's determination that the properly admit-

F. 2d 438, 445–447 (CA7 1986). We conclude that the facts, as fully developed and reviewed in the five decisions below, are sufficient for us to determine whether the prosecutor's question in this case rises to the level of a due process violation.

[8] The first curative instruction occurred immediately after the trial court sustained defense counsel's objection to the prosecutor's question. Although the trial judge indicated that his ruling on the admissibility of this type of evidence was "for the time being," App. 32, he later told counsel at a bench conference that he had determined that this type of questioning was improper. *Id.*, at 43. Defense counsel did not request that any additional instructions be given to the jury. Before the jury began to deliberate, the trial judge nevertheless gave a second instruction to the jury that it should "disregard questions . . . to which objections were sustained." *Id.*, at 47.

We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an "overwhelming probability" that the jury will be unable to follow the court's instructions, *Richardson* v. *Marsh,* 481 U. S. 200, 208 (1987), and a strong likelihood that the effect of the evidence would be "devastating" to the defendant, *Bruton* v. *United States,* 391 U. S. 123, 136 (1968). We have no reason to believe that the jury in this case was incapable of obeying the curative instructions. And far from being "devastating," the fact of Miller's postarrest silence was at most "insolubly ambiguous." *Doyle* v. *Ohio,* 426 U. S. 610, 617 (1976). Miller argues that the curative instructions should have been more specific. But Miller's trial counsel bore primary responsibility for ensuring that the error was cured in the manner most advantageous to his client. Once it became apparent that the judge was not going to grant a mistrial, it was the duty of counsel to determine what strategy was in his client's best interest.

ted evidence at trial "was sufficient to prove defendant's guilt beyond a reasonable doubt," 96 Ill. 2d, at 396, 450 N. E. 2d, at 327, further supports this result.[9]

## IV

We reverse the judgment of the Court of Appeals for the Seventh Circuit and remand for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, concurring in the judgment.

Having dissented in *Doyle* v. *Ohio*, 426 U. S. 610, 620–635 (1976), I can readily understand why the Court might want to overrule that case. But if there is to be a rule that prohibits a prosecutor's use of a defendant's post-*Miranda* silence, it should be a clearly defined rule. Whether the trial court sustains an objection to an impermissible question, or whether the prosecutor is allowed to refer to the defendant's silence in his or her closing arguments, are questions that are relevant to the harmless-error inquiry, or to deciding whether the error made the trial fundamentally unfair. But they play no role in deciding whether a prosecutor violated the implicit promise of *Miranda*—as understood in *Doyle*— that the defendant's silence will not be used against him.

I, therefore, agree with the 10 Illinois judges and 12 federal judges who have concluded that the rule of the *Doyle* case was violated when the prosecutor called the jury's attention to respondent's silence. Moreover, for the reasons stated by the Court of Appeals, I think the violation was serious enough to support that court's conclusion that the error was not harmless beyond a reasonable doubt. *United States ex rel. Miller* v. *Greer*, 789 F. 2d 438, 445–447 (CA7 1986) (en banc). Were this case here on direct appeal, therefore, I would vote to reverse the conviction.

---

[9] This evidence primarily consisted of the detailed testimony of Williams that was corroborated by physical and other testimonial evidence. See 96 Ill. 2d, at 387–392, 450 N. E. 2d, at 323–325.

Nonetheless, I concur in the Court's judgment because I believe the question presented in the certiorari petition— whether a federal court should apply a different standard in reviewing *Doyle* errors *in a habeas corpus action*—should be answered in the affirmative. In *Rose* v. *Lundy*, 455 U. S. 509 (1982), I argued that there are at least four types of alleged constitutional errors.

> "The one most frequently encountered is a claim that attaches a constitutional label to a set of facts that does not disclose a violation of any constitutional right. . . . The second class includes constitutional violations that are not of sufficient import in a particular case to justify reversal even on direct appeal, when the evidence is still fresh and a fair retrial could be promptly conducted. *Chapman* v. *California*, 386 U. S. 18, 22; *Harrington* v. *California*, 395 U. S. 250, 254. A third category includes errors that are important enough to require reversal on direct appeal but do not reveal the kind of fundamental unfairness to the accused that will support a collateral attack on a final judgment. See, *e. g.*, *Stone* v. *Powell*, 428 U. S. 465. The fourth category includes those errors that are so fundamental that they infect the validity of the underlying judgment itself, or the integrity of the process by which that judgment was obtained." *Id.*, at 543–544 (dissenting opinion) (footnote omitted).

In my view, *Doyle* violations which cannot be deemed harmless beyond a reasonable doubt typically fall within the third of these categories. On *direct review*, a conviction should be reversed if a defendant can demonstrate that a *Doyle* error occurred at trial, and the State cannot demonstrate that it is harmless beyond a reasonable doubt. But, in typical *collateral attacks*, such as today's, *Doyle* errors are not so fundamentally unfair that convictions must be reversed whenever the State cannot bear the heavy burden of proving that

the error was harmless beyond a reasonable doubt. On the other hand, there may be extraordinary cases in which the *Doyle* error is so egregious, or is combined with other errors or incidents of prosecutorial misconduct, that the integrity of the process is called into question. In such an event, habeas corpus relief should be afforded.*

In sum, although I agree with the Court's judgment, and the standard that it applies here, I would apply this standard only to *Doyle* violations being considered on collateral review. On direct appeal, a *Doyle* error should give rise to reversal of the conviction unless the State can prove that the error was harmless beyond a reasonable doubt.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL and JUSTICE BLACKMUN join, dissenting.

Today the Court holds that a prosecutor may comment on a defendant's postarrest silence in an attempt to impeach his credibility without thereby violating the rule of *Doyle* v. *Ohio*, 426 U. S. 610 (1976). The Court arrives at this surprising conclusion only by confusing the question whether a *Doyle* violation occurred with the question whether that violation was harmless beyond a reasonable doubt. The holding is remarkable not only because it radically departs from the settled practice of the lower courts, but also because it is founded on a point conceded below and not raised here.

Until today, the common understanding of "our opinion in *Doyle* v. *Ohio* . . . [was that it] shields from *comment* by a prosecutor a defendant's silence after receiving *Miranda* warnings." *Wainwright* v. *Greenfield*, 474 U. S. 284, 296 (1986) (REHNQUIST, J., concurring in result) (emphasis

---

*In *Rose* v. *Lundy*, I noted that the distinction between direct and habeas review is supported by the Court's decisions concerning retroactive application of newly recognized constitutional rights. 455 U. S., at 509, 543, n. 8 (dissenting opinion). Our recent decision in *Griffith* v. *Kentucky*, 479 U. S. 314 (1987), endorsed Justice Harlan's view on this issue to a great extent, and thus supports this proposition. Compare *Griffith*, *supra*, with *Allen* v. *Hardy*, 478 U. S. 255 (1986).

added). Accordingly, a defendant has been able to establish a *Doyle* violation simply by showing that the prosecutor "'call[ed] attention to'" the defendant's postarrest silence. *Doyle, supra,* at 619 (citation omitted). "The standard is strict; virtually any description of a defendant's silence following arrest and a *Miranda* warning will constitute a *Doyle* violation." *United States* v. *Shaw,* 701 F. 2d 367, 382 (CA5 1983); see, *e. g., Passman* v. *Blackburn,* 797 F. 2d 1335, 1346 (CA5 1986) (citing *Shaw*); *United States* v. *Rosenthal,* 793 F. 2d 1214, 1243 (CA11 1986) (same); *United States* v. *Elkins,* 774 F. 2d 530, 537 (CA1 1985) (*Doyle* is "strictly applied so that any description of defendant's silence following arrest and *Miranda* warning . . . constitutes a violation of the Due Process Clause"); *Webb* v. *Blackburn,* 773 F. 2d 646, 648 (CA5 1985) ("*Doyle* . . . proclaimed a general rule that the prosecution cannot comment on an accused's post-arrest silence"); *United States* v. *Remigio,* 767 F. 2d 730, 734 (CA10 1985) ("[T]his Circuit has consistently held that comments by prosecutors on an accused's silence were plain, fundamental error") (citations omitted). In light of this authority and the prosecutor's "clear-cut" attempt to use the defendant's post-arrest silence to impeach his credibility, *United States ex rel. Miller* v. *Greer,* 789 F. 2d 438, 447 (CA7 1986), it is not surprising that the five other courts that examined this case found a *Doyle* violation.

To support its decision that no *Doyle* violation occurred in this case, the Court argues in effect that a single comment cannot be sufficient to constitute a *Doyle* violation. A single comment, the Court suggests, does not amount to the "use" of a defendant's silence for impeachment purposes, and is not equivalent to an "inquiry or argument respecting the defendant's post-*Miranda* silence." *Ante,* at 764. What the Court overlooks, however, is the fact that a single comment is all the prosecutor needs to notify the jury that the defendant did not "tell his story" promptly after his arrest. Although silence at the time of arrest is "insolubly ambiguous" and may be "consistent with . . . an exculpatory explanation," *Doyle,*

*supra*, at 617, 618, and n. 8, nevertheless "the jury is likely to draw" a "strong negative inference" from the fact of a defendant's postarrest silence. *United States* v. *Hale*, 422 U. S. 171, 180 (1975). Thus, as the lower courts have consistently found, a prosecutor may in a single comment effectively use a defendant's postarrest silence to impeach his or her credibility. See, *e. g.*, *United States* v. *Remigio, supra,* at 734–735.

The Court also notes that the trial court sustained defendant's objection to the prosecutor's improper question, and that the court later instructed the jury to disregard all questions to which an objection had been sustained. These actions minimized the harm this particular comment might have caused, the Court implies, and also distinguish this case from previous cases in which this Court has applied *Doyle*. *Ante,* at 764. In the case on which *Doyle* was squarely based, however, the Court reversed a conviction because of improper questioning regarding post-*Miranda* silence even though the jury was immediately instructed to disregard that questioning. See *United States* v. *Hale, supra,* at 175, n. 3. Moreover, the lower courts have routinely addressed similar situations, and in no case in which the prosecutor has commented on the defendant's silence have these courts found contemporaneous objections or curative instructions sufficient *automatically* to preclude finding a *Doyle* violation. Instead, the Courts of Appeals have examined the comment in context, and considered it along with the weight of the evidence against the defendant and the importance of the defendant's credibility to the defense, in determining whether a *Doyle* violation was harmless beyond a reasonable doubt.[1] "In no case has a prompt and forceful instruction *alone* been held sufficient to vitiate the use of post-arrest silence." *Morgan* v. *Hall,* 569 F. 2d 1161, 1167–1168 (CA1 1978) (emphasis

---

[1] See, *e. g.*, *Matire* v. *Wainwright,* 811 F. 2d 1430, 1436–1437 (CA11 1987); *United States* v. *Harrold,* 796 F. 2d 1275, 1280 (CA10 1986); *United States* v. *Elkins,* 774 F. 2d 530, 535–540 (CA1 1985); *United States* v. *Shaw,* 701 F. 2d 367, 382–384 (CA5 1983) (discussing cases).

added) (citing cases); see also *United States* v. *Elkins, supra,* at 534 (instruction that defendant's silence is not evidence of guilt is not enough to cure *Doyle* violations); *United States* v. *Remigio, supra,* at 735 (finding "no merit" in Government's argument that timely objection and cautionary instruction were enough to cure single comment by prosecutor in violation of *Doyle*); *United States* v. *Johnson,* 558 F. 2d 1225, 1230 (CA5 1977) ("Though the trial court instructed the jury not to consider that remark, the testimony was so prejudicial that a simple instruction cannot cure it").

The approach taken by the lower courts reflects both the serious impact of *Doyle* violations on the fairness of a trial, and the inherent difficulty in undoing the harm that they cause. With respect to their impact, more than one Circuit has recognized that "*Doyle* violations are rarely harmless." *Williams* v. *Zahradnick,* 632 F. 2d 353, 364 (CA4 1980) (citing practice in the Fifth Circuit with approval). This is because "questions of guilt and credibility [are often] inextricably bound together," *Morgan* v. *Hall, supra,* at 1168, and because comments upon a defendant's failure to tell his or her story promptly after arrest may significantly undermine the defendant's credibility in the jury's eyes. This case illustrates the potential for harm. The only testimony the State offered that linked the defendant to the crime was that of an alleged accomplice. Jurors often give accomplice testimony reduced weight, particularly when the accomplice has received in return a promise of significant leniency.[2] Here the State's case depended entirely on whether the jury believed the defendant or the alleged accomplice. The pros-

---

[2] Although the accomplice, Randy Williams, admitted shooting the victim, the State dropped charges of murder, aggravated kidnaping, and robbery, and agreed to a sentence of two years' probation, in return for his testimony. *United States ex rel. Miller* v. *Greer,* 789 F. 2d 438, 440, 446, n. 7 (CA7 1986). Respondent Miller was sentenced to 80 years for murder, 30 years for aggravated kidnaping, and 7 years for robbery. *Id.,* at 441. The jury was aware that a "deal" between the State and Williams had been struck. App. 45–46.

ecutor's second question on cross-examination—"Why didn't you tell this story to anybody when you got arrested?"— thus struck directly at the heart of Miller's defense: his credibility. If the rationale of *Doyle* is to have any force, defendants must be protected from such tactics.

Lower courts have also recognized that once the prosecutor calls attention to the defendant's silence, the resultant harm is not easily cured. First, the jury is made aware of the fact of postarrest silence, and a foundation is laid for subsequent, more subtle attacks.[3] Second, "curative" instructions themselves call attention to defendant's silence, and may in some cases serve to exacerbate the harm. In a related context, involving a prosecutor's statement calling attention to the defendant's decision not to testify at trial, JUSTICE STEVENS has argued that "[i]t is unrealistic to assume that instructions on the right to silence always have a benign effect." *Lakeside* v. *Oregon*, 435 U. S. 333, 347 (1978) (dissenting opinion).

"For the judge or prosecutor to call [the defendant's failure to testify] to the jury's attention has an undeniably adverse effect on the defendant. Even if jurors try

---

[3] For example, the prosecutor clearly got full mileage out of his *Doyle* violation during closing argument. He was able to exploit the jury's awareness of defendant's postarrest silence by stressing that the accomplice's testimony was credible precisely because he had *not* remained silent after arrest:

"We made a deal, if you want to call it that, with a guy [the accomplice] who's willing to tell the truth, a man who told the truth of his involvement on February 10, 1980 [the day after the crime]. Sure, he was wrong in details; sure, he left some things out; sure, his statement is confusing; sure, he lied at that time about not being with his brother as they left the Regulator Tavern at first, but he was in custody only a few hours. He was charged with murder. . He knew they had him, cold turkey, but he told them a story, as they call it, an account, as I call it, shortly after his arrest, factually corroborated by an independent investigator. So if you call that a deal, put that aside. The question is, deal or no deal, did Randy tell you the truth. It really boils down to, who told you the story here and who told you the truth? You either believe Randy Williams or you believe 'Chuck' Miller. That is your choice. It's as simple as that." *Ibid.*

faithfully to obey their instructions, the connection between silence and guilt is often too direct and too natural to be resisted. When the jurors have in fact overlooked it, telling them to ignore the defendant's silence is like telling them not to think of a white bear." *Id.*, at 345.

Justice Simon of the Illinois Supreme Court has elaborated on this point:

"An improper inquiry by the prosecutor concerning the defendant's post-arrest silence is not automatically remedied by a cautionary instruction. . . . If [it were], the prosecutor would have little incentive to avoid such inquiries on cross-examination of the defendant; he could safely inform the jury of the defendant's post-arrest silence, risking only an objection by the defendant's counsel and a cautionary instruction by the trial court. A cautionary instruction is at best only a partial remedy. . . . The instruction may confuse the jury; or the jury may disregard it and use the defendant's silence against him anyway. In a close case like this one, based wholly upon accomplice testimony and circumstantial evidence, the reference to post-arrest silence can work extreme prejudice against the defendant, notwithstanding a cautionary instruction." *People* v. *Miller*, 96 Ill. 2d 385, 398, 450 N. E. 2d 322, 328 (1983) (dissenting opinion).

Courts below have therefore considered prompt objections and curative instructions relevant to the question whether a comment on a defendant's silence is harmless error, but irrelevant to the question whether the comment violates *Doyle*. The Court today confuses the two inquiries, and thereby eliminates much of the protection afforded by *Doyle*.

Today's radical departure from established practice is particularly inappropriate because this ground for decision was not presented either to the courts below or to this Court. The State "concede[d]" in the Court of Appeals that "any comment referring to [defendant's] silence after that arrest

[for murder] would be improper." 789 F. 2d, at 442.[4] It sought review in this Court not of the question whether a *Doyle* violation occurred, but whether, assuming the existence of a *Doyle* violation, the standard for appellate review should be more lenient than harmless error.[5] The question decided today was therefore *not* "fairly included in the question presented for review." *Ante*, at 761, n. 3. Moreover, the Court's contention, *ibid.*, that this question was argued in the briefs appears to me simply mistaken.[6] The Court has overturned the judgment below, and upset the settled practice of the lower courts, on a point which the State conceded below and did not raise here, and on which respondent has had no opportunity to be heard.

Today's decision saps *Doyle* of much of its vitality. I would adhere to *Doyle*'s principles, and to the established practice of the lower courts. I dissent.

---

[4] In the Court of Appeals, the State argued against a finding of a *Doyle* violation solely on the ground that "the prosecutor's reference to Miller's postarrest silence could be construed as referring to the period between Miller's arrest on the weapons charge, when no *Miranda* warnings were given, and his arrest on the murder charge and receipt of *Miranda* warnings later that afternoon." 789 F. 2d, at 442.

[5] The sole question presented is explicitly premised on a finding of a *Doyle* violation: "Whether, *when considering violations* of *Doyle* v. *Ohio* in federal habeas corpus proceedings, the standard of review should be whether the error substantially affected the course of the trial rather than whether the error was harmless beyond a reasonable doubt." Pet. for Cert. i (emphasis added).

[6] Although one sentence in petitioner's brief refers to "an attempted violation of the rule of *Doyle*," Brief for Petitioner 16, the brief contains no other reference, direct or indirect, to the argument the Court develops today. One "casual reference . . . in the midst of an unrelated argument, is insufficient to inform a . . . court that it has been presented with a claim." *Board of Directors of Rotary International* v. *Rotary Club*, 481 U. S. 537, 550, n. 9 (1987). Apart from making what is at best a casual reference to the Court's argument, petitioner's brief is devoted to discussion of the question it presented—whether the standard of harmless error is appropriate for *Doyle* violations. Not surprisingly, there is no discussion of the Court's argument in respondent's brief.