165 F.3d 33
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff/Appellee,
v.
Carlton L. CHANEY, Defendant/Appellant.
 No. 98-1655.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 8, 1998.
Decided Oct. 23, 1998.
 
 Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. No. IP 97-068-CR-01 M/F. Larry J. McKinney, Judge.
 Before Hon. RICHARD A. POSNER, Chief Judge, Hon. WALTER J. CUMMINGS, Hon. JESSE E. ESCHBACH, Circuit Judges.
 
 ORDER
 
 1
 Carlton Chaney was convicted in separate jury trials of armed robbery, carjacking, and carrying and using a firearm during those crimes (the first trial); and possessing a firearm as a felon in violation of 18 U.S.C. § 922(g) (the second trial). Chaney contends that the guilty verdict in the first trial must be vacated because of a government witness's unsolicited reference to the fact that Chaney had been incarcerated on an earlier occasion. We affirm.
 
 
 2
 On April 18, 1997 at about 9:20 a.m., three male African-Americans wearing masks and armed with handguns robbed the NBD Bank located at 7007 Shore Terrace in Indianapolis. One of the robbers carried a pink and white pillowcase, into which tellers put $28,173 in cash, including $250 in bills with recorded serial numbers ("bait money"). The robbers ran out of the bank and got into a dark blue Cadillac that had been stolen earlier that morning, and sped away. James Nulf, the husband of one of the bank employees, followed them in his car. On Inland Drive, Nulf saw the robbers (still wearing their masks) standing outside the Cadillac and talking. One robber walked east on Inland Drive while the other two drove west in the Cadillac.
 
 
 3
 The bank robbery was also witnessed by Donna Dauby, who was driving by the bank in her pickup truck when she saw three masked men get out of a Cadillac and run into the bank. She turned her truck around and parked, watching the bank. When she saw the three robbers run out, she called 911 on her cellular telephone and followed their car onto Inland Drive, where it pulled into a driveway. Dauby drove past and turned around, temporarily losing sight of the robbers. As she came back into view of the Cadillac and began watching it, a Chevrolet Suburban drove toward her, swerved around the Cadillac and then drove directly at her, hitting and sideswiping the truck along the length of the driver's side. Dauby drove away as fast as she could. Shortly thereafter, the Suburban crashed into the back of a residence. It was unoccupied by the time the police arrived, but police found a black mask and a pink and white pillowcase with $16,890 in cash, including the recorded bait money, in the passenger area. Also in the car were an Indiana identification card for "Jesse James" with Carlton Chaney's picture, and various car repair documents, some bearing the name "Troy Smith." Six fingerprints, later identified as Chaney's, were on the inside of one of the Suburban's windows. As for the Cadillac, the police recovered it in an apartment complex. Its right rear window was broken and had been covered with duct tape. The end of one of the pieces of duct tape on the Cadillac's window matched the end of a roll of duct tape found in the Suburban.
 
 
 4
 At about 9:30 a.m. on April 18, 1997, an unmasked African-American man entered the home of Mary and William Howe, threatened them with a gun, and demanded the keys to their Oldsmobile. He then took the car and drove off. During the carjacking, Mrs. Howe had more opportunity to observe the man than did her husband. Mrs. Howe tentatively selected Chaney's photograph from an array four days later; Mr. Howe could not make an identification. The police then showed the Howes the "Jesse James" ID with Chaney's photograph; Mrs. Howe believed that it was the same man, but again Mr. Howe could not identify the man. Mrs. Howe eventually testified in court that, when she saw Chaney in court, she was certain he was the carjacker.
 
 
 5
 Police arrested Carlton Chaney on May 2, 1997 as he left an apartment that he had leased in the name of Michael Troy Smith. In the course of the arrest, Chaney fled from the police in his car, pointed his gun at them when he was stopped, and then fled again. When arrested, Chaney was carrying an Indiana driver's license with his picture in the name of Troy Smith, and police found a handgun on the floor of his car. Witnesses later testified that the gun looked like a gun used in the bank robbery and carjacking.
 
 
 6
 Chaney was ultimately charged with armed bank robbery (count 1), carjacking (count 3), using and carrying a firearm in relation to a bank robbery and carjacking (counts 2 and 4), and two counts of unlawful possession of a firearm by a convicted felon (counts 5 and 6). Chaney moved to sever trial on the first four counts from the felon-in-possession counts so that his criminal history would not be introduced at the trial on the bank robbery and carjacking. The district court granted his motion and severed the trials.
 
 
 7
 At his first trial on the first four counts, Chaney put on an alibi defense, introducing testimony from his girlfriend Nyree Lackey and a day care provider that Chaney was taking Lackey's children to day care at the time of the robbery. Lackey stated that Chaney dropped her off at work first, where she clocked in at 9:26 a .m., and then took the children to day care. Additionally, in an effort to show that Chaney had legal means of support, Lackey testified that Chaney lived with her, and paid half the rent between June 1993 and March 1997 from his part-time employment at Magnifiscents, an incense shop. Lackey thought that Chaney also might have worked for his father, Carlton Chaney, Sr.
 
 
 8
 Rebutting the implication that Chaney had significant income, the government put on two witnesses: Dwayne Tyler, who owned Magnifiscents and who said that on two or three occasions he had given Chaney $30-35 for helping out around the shop; and Carlton Chaney, Sr. Near the beginning of his testimony, Mr. Chaney, Sr. responded to a question about the dates when his son might have worked for him by noting that his son had been incarcerated during part of that time:
 
 
 9
 Q: Directing your attention between June of 1993 and May of 1997, did your son, Carlton Lamont Chaney, work for you?
 
 
 10
 A: I'm not really sure about dates, but I can say that, if I may, my son was incarcerated, and upon his release, he came--
 
 
 11
 MR. LOISEAU [Chaney's attorney]: Judge, I'm going to have to move to strike.
 
 
 12
 THE COURT: Just tell us--I'll have to strike that. Just tell us whether he worked for you, or not.
 
 
 13
 Tr. at 520. Mr. Chaney, Sr. eventually testified that his son had worked for him over a two- or three-month period, and that he paid him $350 per week and less than $1,000 total. At the end of Mr. Chaney, Sr.'s testimony, the district judge addressed the jury:
 
 
 14
 THE COURT: Before the next witness comes in, ladies and gentlemen, I just granted the objection to the testimony that this witness had given who related--he just related something about the defendant having been incarcerated. Now, I sustained that objection and I have stricken that from the record. That makes absolutely no difference in this case. That is not to be considered by you at all any time during the course of your deliberation. Everybody understand that?
 
 
 15
 Anybody think they can't do that?
 
 
 16
 Tr. at 522. The judge also instructed the jury, during both the preliminary and the final jury instructions, that testimony stricken by the court was not evidence and must be disregarded. See Appellee's Br., Supp. Appendices 1 and 2. The jury found Chaney guilty of Counts 1-4, the bank robbery and carjacking counts, on November 19, 1997. He was also convicted in his second trial, on Count 6.[1] On March 5, 1998, Chaney was sentenced on all counts to a total of 430 months in prison and ordered to pay $40,299.76 in restitution.
 
 
 17
 Chaney's sole contention on appeal is that his father's mention of incarceration during the first trial was reversible error that effectively negated the purpose of severing the trial. The standard of review is harmless error.[2] In order to establish that the error was harmless, the government must show that the error "does not affect substantial rights," Fed.R.Crim.P. 52(a), and that the jury's verdict of guilty was "surely unattributable to the error." Ross, 77 F.3d at 1540 (quoting Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)); see also Olano, 507 U.S. at 734 (government bears the burden of persuasion with regard to errors analyzed under Rule 52(a)). The error must be harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
 
 
 18
 In analyzing the harmfulness of the error, we look to circumstances surrounding the error at trial. See, e.g., Greer v. Miller, 483 U.S. 756, 765-66, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) (erroneous remark must be viewed in context). Here, the erroneous mention of Chaney's criminal record was an apparently unsolicited statement by Chaney's father, made in the course of testimony on another topic (Chaney's work history). Defense counsel immediately objected and moved to strike, and the judge immediately struck the testimony. The judge then revisited the error at the close of Mr. Chaney, Sr.'s testimony, specifically and emphatically instructing the jury to disregard the comment about incarceration. In the preliminary and final jury instructions, the judge also instructed the jury to disregard testimony that was the subject of a successful objection or motion to strike.
 
 
 19
 "[W]e presume that the jury understood and followed the court's limiting instructions," United States v. Moore, 115 F.3d 1348, 1358 (7th Cir.1998), and thus errors that are the subject of correct instructions to the jury are presumed harmless. Id.; see also Greer, 483 U.S. at 766 n. 8 ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant.") (internal quotation marks and citations omitted). Cf. Wilson v. Groaning, 25 F.3d 581, 587 (7th Cir.1994) ("highly inflammatory and totally irrelevant" testimony was adequately cured by court's prompt striking of testimony and later instructions to disregard; harmless error). The district court's prompt and thorough instructions to the jury rendered Mr. Chaney, Sr.'s comments harmless.
 
 
 20
 Even if the trial court's striking of the comment and instructions to the jury did not fully cure the impact of Mr. Chaney, Sr.'s comment, the evidence of Chaney's guilt was so overwhelming that there is no real doubt that the jury would still have convicted Chaney if the comment had not been made. Chaney's identification and fingerprints were found in a car containing the pillowcase full of cash from the bank robbery and a mask identified by a teller as the one worn by the leader of the robbers. The car contained repair records under Chaney's "Troy Smith" alias, suggesting that it was Chaney's car. Mrs. Howe identified Chaney as the man who took the Howes' car at gunpoint. When the police later attempted to arrest Chaney, he fled from them and threatened them with a gun. Witnesses testified that Chaney's gun was similar to the one used in the bank robbery and the carjacking. The error in this case--testimony that Chaney had been incarcerated on some earlier occasion--adds little to a record replete with evidence of Chaney's involvement with the bank robbery and carjacking. Moreover, the "incarceration" comment was fairly vague and not particularly prejudicial. For instance, there was no mention of the crime for which Chaney had been imprisoned, or whether the crime was a misdemeanor or a felony.
 
 
 21
 A court may find improperly admitted evidence harmless when the other evidence of guilt is overwhelming. See Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) ("the overall strength of the prosecution's case" is "of course" a factor in harmless-error analysis); e.g., United States v. Johnson, 137 F.3d 970, 975 (7th Cir.1998) (error was harmless where evidence against defendant was overwhelming); United States v. Wilson, 134 F.3d 855, 867 (7th Cir.1998) (same). In light of the substantial evidence that Chaney committed the bank robbery and the carjacking (and used a gun while committing these crimes), the error was harmless beyond a reasonable doubt.
 
 
 22
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 [1]
 The government later dropped count 5
 
 
 [2]
 The government contends that the standard of review is for plain error because Chaney did not move for a mistrial. The purpose of the rule that "an objection is forfeited if not raised at trial" is to create "an incentive for defendants to raise objections where they may be most efficiently resolved--before the district court." United States v. Ross, 77 F.3d 1525, 1539 (7th Cir.1996). Here, however, Chaney's attorney objected and moved to strike the reference to incarceration in a timely manner. A motion for a mistrial would not have provided the court with any additional notice of possible error beyond that already provided by the motion to strike. Thus, the error is governed by Federal Rule of Criminal Procedure 52(a) (harmless error), not Rule 52(b). See United States v. Olano, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) ("Rule 52(a) ... governs nonforfeited errors.")