UNITED STATES of America, Appellee,

v.

Luis SUAREZ, Defendant-Appellant.

No. 416, Docket 78-1319.

United States Court of Appeals,
Second Circuit.

Argued Nov. 29, 1978.

Decided Dec. 5, 1978.

Ronald E. DePetris, New York City (De-Petris & Stewart, New York City, of counsel), for defendant-appellant.

David V. Kirby, Asst. U. S. Atty., Eastern District of New York, Brooklyn, N. Y., (Edward R. Korman, U. S. Atty., and Harvey M. Stone, Asst. U. S. Atty., Eastern District of New York, Brooklyn, N. Y., of counsel), for appellee.

Before LUMBARD, MOORE and GURFEIN, Circuit Judges.

GURFEIN, Circuit Judge:

Luis Suarez was convicted of distribution and conspiracy to distribute heroin, in violation of 21 U.S.C. §§ 841 and 846.

The defendant raises only one issue on appeal. He claims that he should be granted a new trial because of allegedly improper and prejudicial remarks made by the Government during its summation. This claim was considered after trial by the District Court and decided adversely to the appellant. After due consideration, we also find appellant's argument to be without merit and thus affirm the conviction, essentially for the reasons stated in Judge Sifton's opinion denying the motion for a new trial.

The key witness for the prosecution was an informant who arranged for a narcotics transaction between one John Soto and two DEA agents. The informant testified that Soto first unveiled his cache of heroin in the presence of appellant and gave the informant a sample to give to his people to test, stating that the sample was of the same quality as the four ounces he had for sale.

Later, at the undercover agents' car, appellant stayed outside while Soto and the witness entered the car to make the deal. Soto stated that appellant was his "lieutenant" who could be trusted. Appellant then stood in a doorway looking up and down the street. Later appellant appeared alongside the agents' car and gave the witness a white bag containing four plastic bags of heroin. The informant gave it to Soto, who handed it to the agents. Appellant handed one of the agents a note with his telephone number and name on it—"498–7068 Luis

Suarez"—and told the agent that his apartment could be used for future transactions. Soto left in the company of appellant with the $5000 that the agents had paid, and the agents and the informant left with the heroin. At trial the parties stipulated that the sample of heroin, Exhibit 1, contained .82 grams of 12% pure heroin, and that the four plastic bags contained 107.16 grams of 4.5% heroin.

In an effort to discredit the informant's testimony, defense counsel claimed in summation that the informant's testimony was inconsistent with other evidence in the record. Specifically, counsel asserted that the informant had testified that the sample heroin he had been given came from one of the four bags of heroin which were ultimately sold to the agents. Counsel argued that this was impossible, since the Government's own chemical analysis indicated that the sample and the heroin sold were of different strengths—12% and 4.5% respectively. The Government countered this argument in its closing remarks by suggesting that the discrepancy in strength could be explained by an imperfect mixing of heroin and "cut," which would cause variations throughout the mixture. The Government also argued that the informant's testimony on the source of the sample was not at all clear and could be interpreted as indicating that the sample had been prepackaged in foil or had come from a separate bag, contrary to the assertions of the defense. The testimony is, indeed, subject to differing interpretations. Appellant claims that the first of these arguments was improper because unsupported by evidence in the record.

■ The principles of law governing this case are well-established. Both prosecution and defense are entitled to broad latitude in the inferences they may suggest to the jury during closing arguments. United States v. Dibrizzi, 393 F.2d 642, 646 (2d Cir. 1968). This does not mean, of course, that either counsel may refer to "facts" that are not in the record, misstate the evidence, or allude to personal knowledge of guilt or innocence that places his own belief on the scales of justice. United States v. Burse, 531 F.2d 1151, 1154–55 (2d Cir. 1976); United States v. Latimer, 511 F.2d 498, 503 (10th Cir. 1975). Nor may counsel substitute his own opinions on summation in lieu of expert testimony, where such is called for. See King v. United States, 125 U.S.App.D.C. 318, 329, 372 F.2d 383, 394 (1967).

■ Suarez claims that the United States Attorney's remarks about the possibility of an imperfect mixture of heroin and "cut" were improper because there was no testimony to indicate either that the heroin involved in this transaction had been "cut" prior to sale, or that the method of cutting would support the prosecution's theory of an imperfect mixture. It is true that expert testimony was lacking on this issue, but we think it was a permissible inference, since there was evidence that the heroin contained 95.5% matter other than pure heroin, and the DEA chemist's reports, which were not placed in evidence but which had been turned over to the defense prior to trial, showed that the heroin contained lactose, a known cutting agent. Moreover, as the trial court noted, the lack of chemical evidence resulted from the defendant's trial strategy. The defendant, by failing to call the Government chemist, chose not to develop evidence on what he perceived to be a "hole" in the Government's case. As a result, there was simply no evidence either way that would indicate what the difference in strength between the sample and the heroin might prove.

We note also that defense counsel's argument that two lots of heroin having different strengths cannot come from the same source, though it was framed in terms of common sense, relied no less on a "scientific proposition" than the prosecutor's contrary assertion.

Whether either argument, or both, were improper given the absence of expert testimony on the disputed issue, however, need not detain us in this case. Here, any error was harmless for three reasons.

The informant's testimony about the sample heroin was, as the Government sug-

gested, at best ambiguous. Indeed, we think the defense counsel's interpretation of that testimony, though not improper, was the more dubious version. There were apparently four plastic bags in the box from which the heroin was taken. The informant did state that the sample came from a plastic bag. He did not say which bag, and he did not say that the heroin ultimately sold came from the same bag. The informant also made an ambiguous reference to being handed the sample on a piece of aluminum foil, which might be interpreted to mean that the sample was "pre-packaged." Indeed, the informant testified that he received assurances that the sample heroin and the package of heroin to be sold were of the same quality. Such an assurance might have been superfluous if the heroin sold was expected to come from the same bag as the sample. We think this testimony lends support to the Government's version of the informant's testimony. A jury, aware of this interpretation, and aware that the defendant's counsel had done nothing to clarify the testimony on which he intended to rely, would in any event have given little weight to the defendant's argument that the sample and the heroin sold had to come from different sources and that, therefore, the informant-witness surely must have lied.

In addition, any inconsistency in the informant's testimony about the heroin sample is collateral. It would go only to show that the informant might not be telling the truth when he placed appellant in the room where the heroin was unveiled. But the credibility of this inculpatory testimony was corroborated by other evidence in the record, specifically Soto's reference to appellant as his "lieutenant," appellant's service as lookout and delivery person at the car, and his conversation with the DEA agents in which he invited them to contact him for further deals. Viewing the evidence as a whole, it seems doubtful that the credibility of the witness' testimony on a major fact such as appellant's presence in the room could have been seriously shaken by a doubtful inconsistency, which was probably nothing more than an ambiguity, in his testimony concerning a minor detail.

Finally, we note that when appellant objected to the prosecuting attorney's summation, Judge Sifton properly advised the jury that the arguments of counsel were not to be taken as evidence in the case. In view of all the circumstances, that was adequate prophylaxis against the danger of the jury's finding the informant to be credible only because of the prosecutor's reply summation. *United States v. Agueci,* 310 F.2d 817, 836–38 (2d Cir. 1962), *cert. denied,* 372 U.S. 959, 83 S.Ct. 1016, 10 L.Ed.2d 12 (1963).

The conviction is affirmed.