**UNITED STATES of America,**
**Appellee,**

v.

**Garland TYREE, Defendant–Appellant.**

**No. 06–4469–cr.**

United States Court of Appeals,
Second Circuit.

May 22, 2008.

acy. *See United States v. Dukagjini,* 326 F.3d 45, 61–62 (2d Cir.2003).

Morris J. Fodeman, Assistant United States Attorney, (Peter A. Norling, Assistant United States Attorney, on the brief), for Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, New York, NY, for Appellee.

Susan G. Kellman, Esq., Law Office Of Susan G. Kellman, Esq., Brooklyn, NY, for Defendant–Appellant.

Present: Hon. RICHARD C. WESLEY, Hon. DEBRA ANN LIVINGSTON, and Hon. J. CLIFFORD WALLACE,* Circuit Judges.

### SUMMARY ORDER

Defendant–Appellant Garland Tyree appeals from a judgment entered September 25, 2006, in the United States District Court for the Eastern District of New York (Dearie, J.), convicting him, after a jury trial, of three counts of unlawful possession of firearms and ammunition, hav-

---

* The Honorable J. Clifford Wallace, United States Court of Appeals for the Ninth Circuit, sitting by designation.

ing previously been convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and one count of unlawful possession of a defaced firearm, in violation of 18 U.S.C. §§ 922(k) and 922(a)(1)(B). We assume the parties' familiarity as to the facts, the procedural context, and the specification of appellate issues.

While Tyree was detained at the Metropolitan Detention Center ("MDC") in Brooklyn, New York pending trial, his telephone conversations were, in accordance with MDC policy, tape-recorded. Prior to trial, defense counsel obtained a subpoena "so ordered" from the district court for Tyree's calls at MDC. Pursuant to MDC's retention policy, however, the calls were recorded over because the personnel at MDC responsible for preserving tapes were not notified of the subpoena. Tyree moved to dismiss the indictment; after a post-trial hearing, the court denied the motion on August 29, 2005. Tyree now seeks dismissal of the indictment on the grounds that the loss of the recordings constituted a violation of his due process rights to: (1) disclosure of favorable evidence under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and (2) to preservation of evidence under *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). We hold both claims are without merit.

■ As we explained in *United States v. Bakhtiar*, 994 F.2d 970 (2d Cir.1993), a case which also involved a government loss of tapes, a due process claim arising in these circumstances should be treated as a claim for loss or destruction of evidence rather than as a *Brady* claim. *Id.* at 975; *see also Youngblood*, 488 U.S. at 57, 109 S.Ct. 333. Destruction of evidence by the government only rises to a constitutional violation when three requirements are met: (1) the government must have acted in bad faith in destroying the evidence, *see Youngblood*, 488 U.S. at 56–58, 109 S.Ct. 333; (2) the "evidence must ... possess an exculpatory value that was apparent before [it] was destroyed," *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); and (3) the defendant must be "unable to obtain comparable evidence by other reasonably available means," *id.* There is no evidence that the government acted in bad faith here; rather, as Judge Dearie found, MDC's failure to preserve the tapes was the result of a "fundamental gap in the bureaucratic network." We are not persuaded by Tyree's claim that MDC's different procedures for dealing with government subpoenas and defense subpoenas is akin to "official animus"—not least of all, because that difference in procedures was not responsible for the loss of the tapes in this case.

In a supplemental brief filed *pro se,* Tyree raises three additional claims: (1) the government violated *Brady* when it failed to disclose that an acquaintance of Tyree's, William Smith, told interviewers that he did not believe that Tyree possessed the firearms that were the basis for his conviction; (2) the government presented perjured testimony from witness Latoya Jackson regarding her familiarity with firearms; and (3) the prosecutor committed misconduct in his summation. We reject each of these claims.

■ The government did not violate Brady when it failed to disclose Smith's statement—that he didn't "think" Tyree owned the firearms in question—to interviewers, because there is not a reasonable probability that its disclosure would have changed the outcome of the trial. *See Strickler*, 527 U.S. at 289, 119 S.Ct. 1936. The prosecutor explained her failure to turn over a report prepared by Special

Agent Thomas J. Shelton, which contained Smith's statement, on the grounds that she believed Smith was lying and that, because Smith admitted he was not present when the firearm in question was found and Tyree was arrested, his belief regarding the firearm's ownership had no basis. Moreover, Smith admitted that Tyree, shortly after being released from prison, asked Smith to obtain a gun for him. Even if the prosecutor should have turned over the agent's report to the defense, there is no reason to think that evidence of the unfounded belief of a friend of Tyree's would have had any effect on the jury's verdict.

■ Tyree has not established that Jackson's testimony regarding her familiarity with firearms was perjurious. While all of the firearms at issue in this case were pistols, in Jackson's original statement to agents, she identified one as a shotgun. Tyree asserts that the government sought to explain away this statement by eliciting, on redirect examination of Jackson, perjurious testimony that she was unsophisticated with respect to firearms when she made her original statement. He also asserts that she perjured herself when she testified on redirect and recross that the night of the events in question—when she saw Tyree with the "shotgun"—was the first time she had seen a gun "in person." Reversal of a conviction based upon allegations of "perjured testimony should be granted only with great caution and in the most extraordinary circumstances." *United States v. Sanchez,* 969 F.2d 1409, 1414 (2d Cir.1992). "Reversal is not justified unless the appellant establishes four matters: (i) the witness actually committed perjury; (ii) the alleged perjury was material; (iii) the government knew or should have known of the alleged perjury at the time of trial; and (iv) the perjured testimony remained un-

disclosed during trial." *United States v. Zichettello,* 208 F.3d 72, 102 (2d Cir.2000) (internal citations and quotation marks omitted). Here, Tyree bases his allegation that Jackson perjured herself on an agent's report of Mehmeti's account of a firearms purchase in which Jackson participated. In the report, Mehmeti says that he asked Jackson whether "both" firearms were in the bag she received from the seller and that she answered in the affirmative. Despite Tyree's assertions to the contrary, this is not evidence that Jackson perjured herself at trial. Indeed, there are any number of explanations for this apparent inconsistency besides perjury, including that: Mehmeti might have lied to the agent or inaccurately described Jackson's statement the night of the firearm purchase; Jackson might have detected two firearms in the bag without visually inspecting them or have merely reported what the seller told her about the contents of the bag; or Jackson may merely have been mistaken when she testified. Because Tyree has not shown that Jackson's testimony was perjurious, he is not entitled to reversal. *See id.* at 102; *see also United States v. Helmsley,* 985 F.2d 1202, 1205–09 (2d Cir.1993).

■ Finally, nothing in the prosecutor's summation undermined Tyree's due process rights. Because "reversing a criminal conviction for prosecutorial misconduct is a drastic remedy," *United States v. Valentine,* 820 F.2d 565, 570 (2d Cir.1987), even where misconduct is established, this Court will not reverse a conviction unless the misconduct "caused the defendant substantial prejudice," *United States v. Rosa,* 17 F.3d 1531, 1549 (2d Cir.1994). "Prosecutorial misconduct denies a defendant due process only when it is 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Blissett v. Lefevre,* 924 F.2d 434, 440 (2d Cir.1991) (quoting *Greer v. Miller,* 483 U.S. 756, 765, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987)).

None of Tyree's allegations of misconduct in the prosecutor's summation—that he "improperly vouched" for one of the testifying agents, that he asked the jury not to "reward" Tyree for "sloppy police work," that he mentioned Tyree's recent release from jail, and that he improperly discounted any familiarity Jackson had gained with firearms after the night of Tyree's arrest—rise to the level of a due process violation. Indeed, it is well settled that "the 'prosecution ... [is] entitled to broad latitude in the inferences [it] may suggest to the jury during closing arguments,' provided that [it does] not misstate the evidence, refer to facts not in evidence, or express counsel's personal belief as to guilt or innocence." *United States v. Smith*, 778 F.2d 925, 929 (2d Cir.1985) (quoting *United States v. Suarez*, 588 F.2d 352, 354 (2d Cir.1978)).

Accordingly, for the reasons set forth above, the judgment of the district court is

AFFIRMED.