Filed 5/18/16  P. v. Villa CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROBERT VILLA, JR.,<br><br>Defendant and Appellant. | F068747<br><br>(Super. Ct. No. VCF209101)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  H. N. Papadakis, Judge.

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and R. Todd Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury found Robert Villa, Jr., guilty of two counts of second degree robbery (Pen. Code, § 211) and found true the gun-use enhancement on both counts (Pen. Code § 12022.53, subd. (b)).  The jury also found Villa guilty of felony evading an officer in a

motor vehicle with disregard for the safety of others (Veh. Code, § 2800.2, subd. (a)) and misdemeanor hit and run (Veh. Code, § 20002, subd. (a)). The jury was unable to reach a verdict on a third count of robbery, and a mistrial was declared as to that count. In a bifurcated proceeding, Villa admitted seven prior serious-felony convictions and that he served a prior prison term. (Pen. Code, §§ 667, subds. (a) & (b)-(i); 1170.12, subds. (a)-(i); 667.5, subd. (b).)

The trial court sentenced Villa to 40 years to life on one count of robbery with the gun-use and prior serious-felony-conviction enhancements; a concurrent 40-year term for the second robbery with the gun-use and prior serious-felony-conviction enhancements; and a consecutive term of 16 months on the felony offense of evading an officer.

On appeal, Villa contends the prosecutor asked improper questions, resulting in prejudicial *Doyle*[1] error; that the trial court erred when it excluded evidence of his conduct when questioned by police; and that cumulative error occurred. We find no prejudicial error and affirm.

## *FACTS*

On the morning of August 20, 2008, Amanda Jones and Theresa Mendes were working at a Hollywood Video store in Tulare when the store was robbed by a man with a silver-and-black revolver. The man had the two employees open four cash registers, an empty safe in the back office, and Mendes's purse. Jones recalled the robber wearing a hat, and she subsequently gave the police a description of a Hispanic male of medium build with a mustache and goatee. Thirty minutes after the robbery, Jones was taken to a location where officers thought they had found the assailant, but Jones could not identify the individual. She did not recognize Villa in court.

Jones testified that the assailant took money from the four tills, took her cellular telephone, and acted aggressively. He told the two women to lie down and threatened to

---

[1] *Doyle v. Ohio* (1976) 426 U.S. 610 (*Doyle*).

2.

shoot them if they got up. Jones described herself as terrified and "really shaken up" during the robbery. As the assailant left, he ripped out the landline telephone cord.

Mendes, the store manager, described the robber as a medium-build Hispanic man with a goatee and a hat. The robber disabled the video surveillance and took the tape recording with him when he left.

Within a week of the robbery, Mendes viewed a photographic line-up and identified Villa. Mendes was 80 percent certain at the time. At trial, Mendes positively identified Villa as the robber, although she noted he no longer had facial hair. Mendes testified she did not "forget eyes."

At approximately 2:00 a.m. on August 23, 2008, officers attempted to stop Villa who was speeding and weaving on State Route 99. As he was pursued by a marked patrol car with activated overhead lights, Villa accelerated to 100 miles per hour. He ignored the patrol car siren and exited the highway, went through a stop light, and proceeded at 90 miles per hour through a residential area. He then ran another red light, made evasive turns, and was eventually clipped by another vehicle, causing Villa to lose control and flip over. Villa was still able to elude officers on that occasion and was not arrested until a few days later. At that time, Villa's physical description was listed as 5 feet 9 inches tall, 200 pounds.

No fingerprints or physical evidence was collected from the video store.

*Defense*

Villa denied robbing the video store but admitted the high-speed chase and hit and run. He testified he refused to stop for the officers because he was high on alcohol and methamphetamine, which he also possessed at the time.

## DISCUSSION

### I. *Doyle error*

Villa contends prejudicial *Doyle* error contributed to his two robbery convictions. Specifically, he contends the prosecutor's question, whether he told officers he led them

3.

on a high-speed chase because he had drugs in his vehicle, was improper and violated his right to silence. He makes a separate argument that the prosecutor's subsequent question, whether Villa told "anyone else," was also improper because "anyone" could be meant to include his attorney, violating his right to silence and interfering with his right to counsel. We combine Villa's two arguments in order to address them efficiently and find no prejudicial error.

### A.     *Procedural background*

On direct examination, Villa testified that he made numerous drug deliveries on the evening of August 22, 2008, and then went to a friend's house about midnight to smoke methamphetamine and drink beer. He left the friend's house to head home and was on State Route 99 when a California Highway Patrol vehicle behind him turned on its lights. He still had drugs with him at the time. Villa panicked and sped up. He admitted going through an intersection without stopping when he was hit by a truck, rolling his own vehicle. Villa testified he was under the influence and fled the scene. He was arrested a few days later.

On cross-examination, the prosecutor challenged Villa's claim regarding the reason he did not stop during the high-speed chase, stating: "Now, today, … you said there were drugs in the car and that was why you were fleeing. But that's not something you said until very recently; isn't that correct?" Villa stated that he did not recall. Defense counsel then objected, a discussion was held off the record, and proceedings continued with the prosecutor asking, "[B]ack in 2008, did you say to the police, 'Hey, I've got drugs in my car. That's why I was running?'" Before Villa answered, defense counsel again objected, another discussion was had off the record, and the trial court admonished the jury to disregard the matter and struck the question.

The following questions and answers then occurred between the prosecutor and Villa:

4.

"Q. Now, you said earlier that you had been delivering drugs to these people. Did you provide any names to the people that you were delivering drugs to on that to substantiate who you were delivering drugs to?

"A. Did I provide names to whom?

"Q. Well, to us, right when you were testifying a few moments ago?

"A. Will I provide names?

"Q. The question is, do you have anyone—you said you were just delivering drugs—

"A. Yes.

"Q. —vaguely. Is there anyone else that you … could have—that you've told us about that you were delivering these drugs to on the night in question?"

Defense counsel objected and the question was stricken.

At the conclusion of evidence, defense counsel requested a mistrial, claiming prosecutorial misconduct because "a couple of questions" the prosecutor asked Villa implicated his constitutional right to silence. Specifically, defense counsel objected to the prosecutor's question of whether Villa told "anybody" about having drugs in the car at the time of the high-speed chase, because one of the people he could have told was defense counsel himself, which would have been "constitutionally protected" communications.

The prosecutor stated he was not asking about any conversation between Villa and counsel, acknowledging that would be improper. Instead, because Villa's explanation was being heard for the "first time," "[t]he question arises, 'Has he told anyone?'"

The trial court explained that it struck the question, "'Did you tell the police about this,'" and admonished the jury because "[t]hat could have constituted a serious breach …." But the trial court found the issue moot because Villa admitted the high-speed chase, "so the right against self-incrimination is not as strong at this point …." The

trial court found the question, "Did you tell anyone else this," proper and denied the motion.

In a subsequent motion for new trial, Villa argued the question whether he told "'anyone'" about why he fled officers was the prosecutor "essentially asking" Villa if he told his attorney. Defense counsel argued this question interfered with his attorney-client relationship in violation of Villa's Sixth Amendment right to counsel. Defense counsel also argued that the question about what Villa "had or had not told police officers, after having invoked Miranda," violated due process pursuant to *Doyle, supra,* 426 U.S. 610. Defense counsel further argued the trial court's admonition did not cure the prosecutor's misconduct because the question itself implied Villa was being less than honest, whether he answered or not.

The trial court ruled no prejudicial *Doyle* error occurred since there was a sustained objection and jury admonition to disregard the question. The trial court also found there was no possibility the question of whether Villa "told anybody" could have affected the attorney-client relationship.

### B. Applicable law and analysis

*Doyle* holds that the prosecution violates due process if it uses the postarrest silence of a suspect who was given *Miranda*[2] warnings to impeach an exculpatory explanation subsequently offered at trial. (*Doyle, supra,* 426 U.S. at pp. 619-620.) The Supreme Court has explained the rationale of this holding in these terms: "[The] use of silence for impeachment [is] fundamentally unfair … because '*Miranda* warnings inform a person of his right to remain silent and assure him, at least implicitly, that his silence will not be used against him.… *Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances.'" (*Fletcher v. Weir* (1982) 455 U.S. 603, 606.)

---

[2]*Miranda v. Arizona* (1966) 384 U.S. 436.

*Doyle* error does not occur if a defendant presents exculpatory testimony at trial that is inconsistent with earlier voluntary statements about the crime (*People v. Collins* (2010) 49 Cal.4th 175, 203), and it does not apply to a defendant's pre-*Miranda* silence, whether such silence occurs before an arrest (*People v. Earp* (1999) 20 Cal.4th 826, 856-857) or after custodial detention (*People v. Delgado* (1992) 10 Cal.App.4th 1837, 1841).

We determine whether *Doyle* error occurred in light of *Greer v. Miller* (1987) 483 U.S. 756 (*Greer*) in which the prosecutor attempted to ask the defendant in the presence of the jury, "'Why didn't you tell this story to anybody when you got arrested?'" (*Id.* at p. 759.) The *Greer* court detailed what happened thereafter:

> "Defense counsel immediately objected. Out of the hearing of the jury, [the defendant's] lawyer requested a mistrial on the ground that the prosecutor's question violated [the defendant's] right to remain silent after arrest. The trial judge denied the motion, but immediately sustained the objection and instructed the jury to 'ignore [the] question, for the time being.' [Citation.] The prosecutor did not pursue the issue further, nor did he mention it during his closing argument. At the conclusion of the presentation of evidence, defense counsel did not renew his objection or request an instruction concerning the prosecutor's question. Moreover, the judge specifically instructed the jury to 'disregard questions … to which objections were sustained.'" (*Greer, supra,* 483 U.S. at p. 759.)

The defendant was found guilty, but his conviction was set aside because of *Doyle* error. (*Greer, supra,* 483 U.S. at pp. 759-760.)

The Supreme Court reversed. In reaching its conclusion that "no *Doyle* violation occurred in this case" (*Greer, supra,* 483 U.S. at p. 765), the court explained that a *Doyle* violation has two components, both of which must exist. The first element is that the prosecution makes *use* of a defendant's postarrest silence for impeachment purposes. Use of a defendant's postarrest silence can occur either by questioning or by reference in closing argument. The second essential element is that the trial court *permits* that use. (*Greer, supra,* at pp. 761-764.) The type of permission specified in *Greer* will usually take the form of overruling a defense objection, thus conveying to the jury the

7.

unmistakable impression that what the prosecution is doing is legitimate. In *Greer*, the prosecutor attempted to ask an improper question, but the action of the trial court, including sustaining the objection and advising the jury to disregard any question to which objections had been sustained, denied the prosecution permission to use the defendant's postarrest silence. (*Id.* at p. 765.)

Here, although Villa suggests the prosecutor's questions were posed after he was advised of his right to silence and invoked that right, there is no citation to the record which establishes these critical points. In any event, even if Villa invoked his right to silence, no *Doyle* error occurred. Similar to the situation in *Greer*, although the prosecutor attempted to ask Villa whether he told police he fled because he had drugs in his vehicle, the trial court immediately sustained defense counsel's objection, explained that a defendant has a right "not to make statements," instructed the jury it was to "disregard the last question and answer," and ordered it stricken. When the prosecutor attempted to ask Villa whether he told "anyone else," defense counsel objected and the trial court sustained the objection and struck the question. The fact of Villa's postarrest silence was therefore not submitted to the jury as evidence from which it was allowed to draw any permissible inference, and thus no *Doyle* violation occurred.

Even if we assume, arguendo, that *Doyle* error occurred, we conclude it did not prejudice Villa. On the facts of this case, the questions by the prosecutor went to Villa's motive for leading the police on a high-speed chase. The questions alone had no incriminating impact upon the evading charge because Villa specifically admitted that criminal conduct. Neither can the question be seen as having any incriminating impact on the two robbery charges, alleged to have occurred three days before the high-speed chase, considering the testimony of Mendes and Jones implicating Villa on those charges. Thus, any assumed *Doyle* error was harmless beyond a reasonable doubt in light of the trial court's order to strike and disregard the questions and the overwhelming evidence of

8.

Villa's guilt. (*People v. Hughes* (2002) 27 Cal.4th 287, 332; *Chapman v. California* (1967) 386 U.S. 18, 24.)

## II. Evidence of Villa's conduct

Villa contends the trial court prejudicially violated his right to present a defense by excluding his reaction to an officer when initially questioned about the robbery. We disagree.

### A. Procedural background

During the defense case, Officer James Haney was questioned regarding a discussion he had with Villa after his arrest. Defense counsel had wanted to elicit testimony from the officer that Villa had acted surprised when he was confronted about the robbery. The prosecutor objected and the objection was sustained. The trial court stated, for the record, that it sustained the objection because defense counsel "had elicited a hearsay response, a self-serving response" from Villa.

Defense counsel argued Villa's response to Officer Haney should have been allowed as it was either "admissible hearsay because it was a spontaneous … 'utterance,'" or it was a nonverbal reaction. Defense counsel argued that, not allowing Villa's response into evidence denied him his "constitutional right to put on a defense." The trial court denied the motion.

Villa challenged the exclusion of that evidence in his new-trial motion. Defense counsel argued Villa's surprised reaction to the officer's question was admissible because it was not a statement but rather nonassertive conduct and therefore not hearsay. He argued in the alternative that, if the reaction was assertive conduct and a statement for purposes of the hearsay rule, it was admissible under the spontaneous-utterance exception.

The trial court denied the new-trial motion, finding Villa's reaction to be "self-serving hearsay." The trial court further noted Villa never testified in court that he was

surprised he was being investigated for robbery, and the exclusion of his reaction was harmless in any event.

### B.    *Applicable law and analysis*

Villa contends the trial court's limitation on Officer Haney's potential testimony denied him the right to present a critical defense.  We disagree.

Generally, the application of the rules of evidence do not impermissibly infringe on one's right to present a defense, and an attempt to inflate an ordinary evidentiary issue to a constitutional one is not persuasive.  (*People v. Thornton* (2007) 41 Cal.4th 391, 443.)

In addition, "'excluding defense evidence on a minor or subsidiary point does not impair an accused's due process right to present a defense.'"  (*People v. Boyette* (2002) 29 Cal.4th 381, 428.)  For exclusion of defense evidence to rise to the level of a violation of a defendant's constitutional rights, "'the proffered evidence must have more than "slight relevancy" to the issues presented .…  The proffered evidence must be of some competent, substantial and significant value.'"  (*People v. Tidwell* (2008) 163 Cal.App.4th 1447, 1457.)

Here, the proffered evidence, whether hearsay or not, had only slight relevance to the issues presented, and its exclusion did not rise to the level of a constitutional violation.  The purported reaction of Villa to Officer Haney's mention of the robbery could just as easily have been self-serving as it was an assertion of innocence.  This is especially true in light of the fact that the discussion about the robbery occurred a week after the robbery, giving Villa plenty of time to contrive a response to any accusations.  Furthermore, while Villa's attempt to present this evidence was not allowed, there was nothing preventing Villa from testifying directly about his reaction to the robbery accusation.

In any event, Villa cannot show prejudice.  The evidence of his guilt in support of the robbery and felony evading charge was strong.  There is no reasonable probability

Villa would have received a more favorable verdict if Officer Haney had been permitted to testify as Villa desired. (*People v. Watson* (1956) 46 Cal.2d 818, 836; see also *People v. Gonzales* (2011) 51 Cal.4th 894, 924.)

### III. *Cumulative Error*

Finally, Villa contends the jury would have reached a more favorable result but for the cumulative effect of the alleged errors. As we have "'either rejected on the merits [Villa's] claims of error or have found any assumed errors to be nonprejudicial,'" we reach the same conclusion with respect to the cumulative effect of any claimed errors. (*People v. Cole* (2004) 33 Cal.4th 1158, 1235-1236; see also *People v. Butler* (2009) 46 Cal.4th 847, 885.)

## DISPOSITION

The judgment is affirmed.

_____

Smith, J.

WE CONCUR:


_____

Gomes, Acting P.J.


_____

Peña, J.

11.